Charles J. BULKIN

v.

**WESTERN KRAFT EAST, INC.**

**Civ. A. No. 75–2929.**

United States District Court,
E. D. Pennsylvania.

Oct. 29, 1976.

Shirley D. Weisman, Collingdale, Pa., for plaintiff.

Cornelius C. O'Brien, Jr., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

### I. STATEMENT OF THE QUESTIONS INVOLVED

Before us is an issue which appears to be one of first impression in the federal courts. *Should a diversity suit which alleges negligent maintenance of personnel records be treated as a defamation action, rather than one sounding in negligence, with respect to the choice and application of the appropriate state statute of limitations?*

Plaintiff, Charles J. Bulkin, has sued his former employer, defendant Western Kraft East, Inc.; he claims he has been damaged by defendant's negligence in maintaining personnel records, and seeks recovery accordingly. Pursuant to F.R.Civ.P. 12(b)(6), defendant moved to dismiss the complaint; its motion is based solely upon its contention that plaintiff's cause of action is time-barred by the one-year limitations periods which govern defamation actions under the applicable Pennsylvania and New Jersey statutes and decisional law. Defendant argues that the cause of action is one for defamation, not for negligence; accordingly, it contends that the one-year statutes of limitations require dismissal of the complaint under the law of both jurisdictions.

Our decision, as to whether plaintiff's complaint was filed within the time period established by the applicable statutes, depends upon disposition of the following subsidiary issues: *First:* does the law of Pennsylvania, or the law of New Jersey, control with respect to the choice of the limitations principles which we must follow in deciding this matter? *Second:* when selecting the appropriate limitations statute of either state, should the action be regarded as one for negligence or as one for defamation? *Third:* will characterization of the cause as one for negligence or as one for defamation, depend in turn upon our choice of the substantive law of Pennsylvania or of that of New Jersey? and *Fourth:* if we elect to follow the limitation law of Pennsylvania, does that state's "borrowing" statute require us to apply a New Jersey limitations period? We have considered these issues in light of the pleadings and briefs before us, as well as our own independent research, and conclude that *the limitations principles established under Pennsylvania law should control; moreover, we have also concluded that plaintiff's cause of action should be treated as one for negligence, and not for defamation. Accordingly, we hold that under the Pennsylvania statutes of limitations for negligence actions, which are control-*ling *in this matter, the complaint was timely filed; and we will, therefore, deny defendant's Motion to Dismiss.* Our reasons follow:

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY OF THE CASE

 It is, of course, axiomatic that we must accept the truth of all of the material allegations of the complaint in connection with our disposition of defendant's Motion to Dismiss. We cannot grant that motion unless we are convinced that plaintiff could not possibly establish facts, in support of his claim, which would entitle him to relief; we must construe the complaint liberally, and resolve all doubts which appear on the face of the pleading in plaintiff's favor. *Quinones v. United States,* 492 F.2d 1269, 1273 (3d Cir. 1974); *Miller v. American Telephone and Telegraph Company,* 507 F.2d 759, 761 (3d Cir. 1974); *Melo-Sonics Corporation v. Cropp,* 342 F.2d 856, 858 (3d Cir. 1965); *Frederick Hart & Co. v. Recordgraph Corporation,* 169 F.2d 580, 581 (3d Cir. 1948).

We will review the underlying facts against this backdrop. Defendant, Western Kraft East, Inc., is a New Jersey corporation, with offices in Bellmawr, New Jersey. During the period from July 15, 1970, until November 1, 1973, plaintiff Bulkin, a Pennsylvania resident, was employed by the defendant as a salesman of corrugated paper boxes. Due to a shortage of paper in this particular industry, defendant apparently decided, in November, 1973, to reduce its sales force; plaintiff was discharged as a result of this cutback. Defendant then wrote a letter of introduction and recommendation for plaintiff.[1]

On or about March 25, 1974, plaintiff discovered that his former employer had furnished Retail Credit Company with allegedly incorrect personnel information. This information related to the circum-

---

1. Plaintiff's Complaint, Exhibit "A". This letter, addressed "To Whom It May Concern", and signed by the company's General Manager, comments favorably upon plaintiff's diligence as a salesman, and his dedication to the company.

**440**

stances of plaintiff's severance; the thrust of the data provided by defendant was that plaintiff's sales record was the spur which led him to leave Western Kraft East, Inc., by "mutual agreement", and that he "would not be eligible for rehire".[2]

Plaintiff explicitly avers that defendant, through its agents and employees acting in the scope of their employment, was negligent, in that it failed to maintain correct personnel records about plaintiff; he contends that this dereliction is the direct cause of the mental pain, distress, humiliation, and financial loss, which he allegedly has suffered. Plaintiff also claims that his reputation for competence has been severely undermined; the deleterious effect charged is the prejudice these statements will kindle when potential employers consider his qualifications.[3]

Significantly, the complaint does not aver that the "statements" made by defendant were of a "defamatory" nature, or that defendant acted maliciously or wilfully in making these allegedly incorrect statements. Although the complaint states that "incorrect statements" had been "given" by defendant to Retail Credit Company, the nub of the complaint is the *negligent maintenance of* the personnel records, with the concomitant foreseeable effect upon prospective employers. Thus, in construing the entire complaint in a light most favorable to the plaintiff, any segregation of the claim of "incorrect statements" as a wholly independent allegation of wrongdoing, apart from the averments of faulty record-keeping, would do violence to the principles which must govern our disposition of the motion to dismiss. *See, Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Quinones v. United States, supra,* at 1273; *Miller v. American Telephone and Telegraph Company, supra,* at 761.

Plaintiff filed this suit on October 15, 1975, more than one year after he first learned of the incorrect personnel information, but less than two years thereafter. For purposes of deciding the Motion to Dismiss, we will fix March 25, 1974, as the date on which plaintiff's cause of action matured.[4] Thus, if we were to accept defendant's characterization of the action as one for defamation and, consequently, to apply the one-year limitations periods urged by defendant, then the complaint would be untimely. If, on the other hand, we accept the plaintiff's characterization of the action as one for negligence, and then apply a Pennsylvania statute of limitations for negligence, then the complaint would be timely; the application of either of the Pennsylvania statutes which govern negligence actions, 12 P.S. § 31 (six years), or 12 P.S. § 34 (two years), would dictate a finding of timeliness.

We also note that the institution of this action followed our dismissal of a prior federal suit by plaintiff against the same defendant. The prior action, *Bulkin v. Western Kraft East, Inc.,* C.A. 75–2003, filed in this district on July 11, 1975, was based

---

**2.** The information furnished to Retail Credit Company is reflected in Exhibit "B" to Plaintiff's Complaint; Exhibit "B" is a Retail Credit Company personnel report about plaintiff, which only names defendant as the source of the information contained therein.

**3.** These allegations of negligence and of resulting injury are set forth in plaintiff's Complaint, paragraphs eight and nine.

**4.** The precise date on which the cause of action accrued is immaterial to our resolution of the limitations issue raised by defendant. Since plaintiff was not discharged by defendant until November 1, 1973, his cause of action, based as it is upon records which incorrectly reflect the reasons underlying that discharge, could not

have matured prior to that date. From the allegations of the complaint, it is equally apparent that some injury had been suffered by March 25, 1974, and plaintiff has not argued that his cause of action occurred any later than his March 25 discovery of the existence of incorrect information. The cause of action therefore accrued sometime between November 1, 1973 and March 25, 1974. We see no need to fix a more precise date, as any date within that time period would be more than one year and less than two years prior to the commencement of plaintiff's suit on October 15, 1975. Thus, we need only decide whether to apply a one-year period of limitations, or a period of two years or longer.

upon the same factual situation which underlies the instant complaint. In the initial action, however, plaintiff set forth a cause of action which sounded exclusively in defamation.[5] Upon plaintiff's own initiative, and with defendant's concurrence, that action was dismissed by this Court's Order of September 4, 1975; because our Order specified that the dismissal was "without prejudice", plaintiff retained the right to refile his suit under an alternate legal theory.

With these facts as background, we now proceed to our disposition of the issues raised by the Motion to Dismiss.

### III. THE CONFLICTS ISSUE: DOES THE LAW OF NEW JERSEY OR PENNSYLVANIA GOVERN WITH RESPECT TO SELECTION OF THE APPROPRIATE STATUTE OF LIMITATIONS?

■ It is clear that this matter is before us solely because of diversity of citizenship; plaintiff is a Pennsylvania resident, and defendant is a New Jersey corporation. Accordingly, we must apply the substantive law of our forum state (Pennsylvania), and must refer to the conflicts of law rules of that jurisdiction, in connection with our choice of the appropriate limitations doctrine. *Klaxon Co. v. Stenton Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As a general rule, Pennsylvania courts, when confronted by conflicts problems, apply the limitations statutes of the forum state. *Freeman v. Lawton,* 353 Pa. 613, 46 A.2d 205 (1946); *Rosenzweig v. Heller,* 302 Pa. 279, 153 A. 346 (1931). The prominent exception to this general rule is the so-called "borrowing" statute, 12 P.S. § 39, which requires a Penn-

sylvania court, under certain circumstances, to accord *de facto* recognition to the limitations statutes of another state. We will defer our discussion of the "borrowing" statute, and look initially to the impact of the general Pennsylvania rule, calling for the application of the limitations statutes of the forum state. In the present case, of course, application of that rule requires that we follow the limitations statutes of Pennsylvania.

Our decision to apply the limitations law of Pennsylvania is, however, only the beginning of our inquiry. Which of the various Pennsylvania limitations periods should properly govern adjudication of this cause of action? Defendant asserts that the cause of action is one for defamation, and urges that we apply Pennsylvania's one-year statute of limitations for defamation actions, 12 P.S. § 32.[6] Plaintiff responds, however, that the action must be treated as one for negligence, and jumps to the conclusion that the only applicable statute of limitations is the Pennsylvania two-year statute for personal injury actions, 12 P.S. § 34. However, we believe such a conclusion to be unwarranted on the basis of the pleadings before us. *We perceive yet another arguably relevant Pennsylvania statute of limitations: 12 P.S. § 31, the general six-year limitations statute, which would govern a negligence action not involving personal injury.*

What, then, are the factors to be weighed in choosing among these different limitations periods? In the first instance, a preliminary determination is required with respect to the nature of the complaint. Does it sound in negligence or in defamation? *That decision, however, depends upon our*

---

**5.** The Complaint in C.A. 75–2003 contained, *inter alia,* allegations of "defamatory, libelous and unprivileged" statements by defendant; allegations that such statements were "wilfully and maliciously made"; allegations of publication; allegations of "express and implied malice"; and allegations of injury to plaintiff's good name, reputation, and business. Significantly, none of these allegations, with the exception of injury to reputation, appears in the instant complaint, C.A. 75–2929, and the prior complaint does not make any reference what-

ever to the negligence in record-keeping—a key ingredient in the mix of the instant complaint.

**6.** Repealed, 1974, Dec. 10, P.L. 867, No. 293, § 19, effective immediately. The parties have not addressed themselves to the issue of the effect of the repeal of 12 P.S. § 32 upon the outcome of this case. We hold that this statute is inapplicable to plaintiff's cause of action, thus obviating the necessity to decide this issue.

*choice of the controlling substantive law. Substantive determination of this litigation could be controlled by the law of New Jersey, or by that of Pennsylvania, notwithstanding our choice of the limitations principles set by Pennsylvania law. Thus, we must also resolve yet another problem, the choice of a body of substantive law which will govern the legal rights of the parties.*

## A. Choice of substantive law

 Applying, again, the precept that a federal court must be guided by the conflicts rules of the forum in which it sits (*Klaxon, supra*), we turn to the conflicts principles established by Pennsylvania law. Unlike the choice of *limitations law, a procedural matter,* the choice of *substantive law,* under Pennsylvania conflicts rulings, *is governed by an interest analysis.* Pennsylvania has abandoned the *lex loci delecti* doctrine, in favor of the more recently accepted *"grouping of contacts"* test; the relevant inquiry focuses upon a decision as to which forum has the most significant relationship to this particular controversy. *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964).

Based upon the allegations of the complaint, we have only the following facts before us: (1) plaintiff resides in Pennsylvania, and (2) defendant company has its offices in New Jersey. The pleadings do not disclose the state of plaintiff's employment, the situs of plaintiff's employment records, nor the fact of maintenance of an office in Pennsylvania by defendant. Assuming that plaintiff was attached to the New Jersey office, and assuming further that his personnel records were kept at that location, then New Jersey might arguably have the more substantial contacts with any alleged negligence in record-keeping. However, depending upon the location of the Retail Credit Company, or upon the location of any businesses which might have been influenced by the incorrect personnel information, we can conceive of a set of facts which could establish Pennsylvania as the state in which the actual injury oc-

curred; consequently, it would follow that the substantive law of Pennsylvania might be applied under the *Griffith* test.

In light of the scant record before us, any decision as to which state has the more significant contacts with this litigation would be completely speculative. We will avoid such a flight of fancy, by holding that both under the substantive law of Pennsylvania and under that of New Jersey, plaintiff has properly pleaded an action for *negligence.* Hence, we need not, and will not, decide the issue of the choice of substantive law, since under the law of both states the complaint properly would be regarded as one setting forth a cause of action for negligence, and not one for defamation.

## B. Characterization of the cause of action as negligence—not defamation

 We reject defendant's argument that the complaint must be interpreted as stating a cause of action for defamation, rather than one for negligence. Defendant has failed to direct our attention to any Pennsylvania or New Jersey cases which support its attempt to discredit the legal sufficiency of plaintiff's allegations of negligence under the law of both of those jurisdictions. *Neither the Pennsylvania nor the New Jersey courts have considered the precise issue with which we are faced; i. e., whether allegations of improper record-keeping by an employer can give rise to an action for negligence. Our own review of the case law of each of those states convinces us, however, that plaintiff has properly pleaded a valid action in negligence, and that his cause of action is not preempted by the possible existence of an alternate remedy in the nature of an action for defamation.* Our reasons on this score follow:

### 1. Negligence under Pennsylvania law

Our analysis of Pennsylvania law is heavily influenced by the decision in *Quinones v. United States,* 492 F.2d 1269 (3d Cir. 1974), in which the Third Circuit reversed the lower court's dismissal of a complaint, filed

under the Federal Tort Claims Act[7] that was based upon allegations of negligence in the maintenance of employment records. Because the Federal Tort Claims Act specifically excludes claims for slander and libel,[8] the *Quinones* court was faced squarely with the issue of recognition by Pennsylvania courts of a tort of "negligent maintenance of employment records", in contradistinction to the tort of "defamation". The Third Circuit candidly stated that the Pennsylvania courts had not yet faced that particular issue; hence, the Court resolved the matter upon its own prognostication of Pennsylvania state court action, based upon existing case law; *it held that the tort of "negligent maintenance of employment records" would and does exist under the law of Pennsylvania; the Court further ruled that such a cause of action was not pre-empted by the law of libel and slander.*

We find the rationale of the *Quinones* decision persuasive. *Accordingly, we hold in this diversity action that, if this action were brought in the courts of Pennsylvania, the appellate courts of Pennsylvania would hold that a cause of action exists for "negligent maintenance of employment records".* The *Quinones* court discussed, at length, the fundamental nature of actions for negligence and actions for defamation, under Pennsylvania law, and stressed that the two torts were "conceptually distinct" in their root premises, and substantially different with respect to their essential ingredients; the court also noted that different standards of proof of injury, and different statutes of limitations, governed each of the two actions. *Quinones, supra,* at 1274–1275. Although recognizing that the interest protected by each form of action could be the same; e. g., the interest in reputation, the court declined to hold that such similarity with respect to the zones of protected interest required allegations of negligence to be treated as claims for defamation; the court viewed the availability of multiple or alternative causes of action as a "phenomenon . . . not unusual to the substantive law of torts", and one which would not restrict a plaintiff to the choice of any single remedy among several available ones. *Quinones, supra,* at 1275. Noting that the essence of a defamation action is the publication of defamatory matter, while the essence of the complaint before the court in *Quinones* was the failure to maintain adequate employment records, the court concluded:

> It is not the publication of the incorrect employment history and record that serves as the foundation of plaintiff's complaint; it is the method in which the defendant maintained the record of his employment that is being criticized. Accordingly, we are persuaded that the Pennsylvania courts would not view the defamatory torts as pre-empting a cause of action sounding in negligence and based on an employer's failure to use due care in the maintenance of an employee's employment records.

*Quinones, supra,* at 1276. Since the allegations of Bulkin's complaint are weighted toward negligent record-keeping, rather than toward wrongful publication of defamatory matter (see discussion, *supra,* p. 440), we are in accord with the rationale of *Quinones* and will apply its holding to our case. *Quinones* described the basic elements of the tort in the following language:

> Having due regard for those principles of tort law followed by the Pennsylvania Supreme Court, we are persuaded that the state courts would recognize a duty of the defendant personal to the plaintiff to use due care in keeping and maintaining employment records, and that for breach of that duty, plaintiff may have a cause of action, if he is injured thereby and if the defendant's breach was the proximate cause of his injury.

*Quinones, supra,* at 1278.[9]

Hence, plaintiff's complaint, alleging, as it does, that defendant's negligent record-

---

7. 28 U.S.C. § 1346(b).

8. 28 U.S.C. § 2680(b). *See also, Quinones v. United States,* 492 F.2d 1269 (3d Cir. 1974).

9. We recognize that the employer in *Quinones* was a federal agency, and that the Third Circuit considered certain federal administrative regulations in determining the precise duty to be

keeping is the direct cause of the injuries plaintiff has suffered, fully satisfies the *Quinones* criteria.

Defendant urges us to disregard the *Quinones* precedent, because that case did not present the court with the issue of the choice between statutes of limitations. We reject this argument as insubstantial; in our view it is a distinction without a difference. *Quinones* marks the beginning of a new trail; despite the factual differences between *Quinones* and this case, we have no doubt that the Pennsylvania appellate courts, if faced with the same issue, would apply the limitations statutes which govern in cases of negligence. Defendant rests its position on three cases;[10] their precedential value is not persuasive, in light of the *Quinones* decision, and of our own perception of the decision an appellate court of Pennsylvania would reach, if squarely presented with the limitations question which we now confront. None of the three cases required a court to rule upon the subtle differences between causes of action sounding in defamation and those sounding in negligence; in none of the cases was a court confronted with the conflict before us—the choice of the applicable limitations statute, based upon a determination of the nature of the cause of action, one for defamation or one sounding in negligence. Each of the cases cited by defendant deals only with an issue as to the statute of limitations which should properly govern a claim of civil conspiracy; in each instance the court chose the proper statute which would apply to an underlying overt act or to an underlying substantive offense.[11] In the instant case, defendant argues that the defamation limitations period should be applied, since the "overt act" set forth in Bulkin's complaint is one of defamation. We cannot accept defendant's attempt to analogize the conspiracy precedents to the case at bar; plaintiff has not made any allegation remotely akin to conspiracy; to the contrary, the pleading avers an independent substantive cause of action, one for negligence.

### 2. Negligence under New Jersey law

Plaintiff could conceivably prove a set of facts, which would require that the substantive law of Pennsylvania govern this action; his case would then be characterized according to Pennsylvania law, and, accordingly, be viewed as an action in negligence, under *Quinones*. By the same token, it is wholly possible that the substantive law of New Jersey would control, if further development of the record were to reveal that the interests of that state are paramount. Since we have concluded that Pennsylvania substantive law could conceivably govern this action, and that the complaint must be viewed as timely pleading a cause of action for negligence under Pennsylvania law, we question whether the substantive law of New Jersey need even be discussed. We must, as noted, view the complaint in a light most favorable to plaintiff, see cases cited *infra,* which would appear to compel the choice of Pennsylvania law, if New Jersey law would treat the matter to the detriment of plaintiff. Nonetheless, we believe a brief discussion of our view of the law of New Jersey is warranted. If New Jersey substantive law were to be controlling, and if the appellate courts of that state would

---

imposed upon that particular employer; however, the court also found a standard of conduct which existed solely by virtue of Pennsylvania judicial decisions, independent of any federal guidelines or regulations. Thus the possible distinction between a federal employer, and a private one, has no controlling legal significance in this case.

**10.** *Ammlung v. City of Chester,* 494 F.2d 811 (3d Cir. 1974); *Auld v. Mobay Chemical Co.,* 300 F.Supp. 138 (W.D.Pa.1969); *Cimijotti v. Paulsen,* 230 F.Supp. 39 (N.D.Iowa 1964), aff'd 340 F.2d 613 (8th Cir. 1965).

**11.** For example, in the *Auld* case, *supra* note 10, a statute of limitations governing defamation actions was held applicable to allegations of a civil conspiracy to defame, *because the underlying overt act was one of defamation.* Cf. *Loughrey v. Landon,* 381 F.Supp. 884, 886 (E.D.Pa.1974). But the issue of whether the plaintiff might also have had a cause of action for negligence was not raised in *Auld;* we see no justification for now extending *Auld* by applying a defamation limitations period to allegations of negligence, when the issue in that case was conspiracy to defame.

view plaintiff's complaint as one for defamation, we might then be required, in our choice of a Pennsylvania limitations statute, to apply the one-year defamation statute, 12 P.S. § 32. Our own review of New Jersey substantive law, however, persuades us that plaintiff's complaint would be treated as one sounding in negligence by that jurisdiction; accordingly, in the absence of any New Jersey authority to the contrary, we decline to hold that the law of that state compels a ruling that the only permissible characterization of this action is as one for defamation.

It is significant that defendant has failed to cite a single case to sustain its position that the law of New Jersey dictates that we label this a defamation action. The absence of such a decision convinces us to adopt the analysis in *Quinones* in reaching a decision with respect to the result a New Jersey court would reach if faced with this issue. Although the *Quinones* court was interpreting Pennsylvania law, we note that the fundamental principles of law of defamation and of negligence, the basis of the *Quinones* holding, have their New Jersey counterparts, and suggest a similar result under the law of that state. The rationale underpinning *Quinones* is firmly anchored; we will not undermine that structure, in the absence of any precept which would persuade us that the courts of New Jersey would rule otherwise.

This choice is based upon the structure that has been erected by the courts of New Jersey in several key decisions in which the tribunals of that state have consistently held *that a possible action in defamation will not preclude the maintenance of a suit based upon a different theory of tort liability* which may arise from the same factual situation, notwithstanding the fact that a defamation action would be time-barred. *See, Henry V. Vaccaro Construction Co. v. A. J. DePace, Inc.,* 137 N.J.Super. 512, 349 A.2d 570 (1975), (despite evidence of injurious statements, one-year statute of limitations for slander and libel held not a bar to complaint based upon the separate tort of trade libel); *Strollo v. Jersey Central Power & Light Co.,* 20 N.J.Misc. 217, 26 A.2d 559 (Sup.Ct.1942), (notwithstanding allegations of slander, one-year statute of limitations applicable in defamation actions held not a bar to complaint for malicious interference with business relationship); *Van Horn v. Van Horn,* 56 N.J.L. 318, 28 A. 669 (E. & A. 1893). In both the *Vaccaro* and the *Strollo* decisions, the New Jersey courts specifically rejected the concept that it was bound to strictly construe an action as one for defamation, when the averments of a complaint in fact plead a distinct and separate tort. Under such circumstances, the courts of New Jersey have refused to apply defamation limitations periods to these separate and distinct causes of action. These decisions are in harmony with the *Quinones* standard, and lead us to conclude that New Jersey courts would apply the applicable negligence limitations statute when the substance of the complaint avers negligent record-keeping. *Cf., Quinones* at 1278.

Moreover, the allegations in Mr. Bulkin's complaint set forth an action for negligence, in conformity with the requirements of New Jersey decisions, specifying that a negligent act be pleaded in addition to the averment of actual injury proximately resulting therefrom. *See, e. g., Biglioli v. Durotest Corp.,* 44 N.J.Super. 93, 129 A.2d 727, aff'd 26 N.J. 33, 138 A.2d 529 (1958); *Kovacs v. Everett,* 37 N.J.Super. 133, 117 A.2d 172 (N.J.Super.A.D.1955).

## IV. APPLICATION OF THE PENNSYLVANIA LIMITATIONS STATUTES

Under Pennsylvania law, any one of three separate limitations periods might arguably be applied to Bulkin's cause of action. If we had viewed the cause of action as one sounding in defamation, then 12 P.S. § 32 would have required the application of a one-year limitations period. However, since we have chosen to treat the complaint as pleading a cause of action for negligence, then, instead of applying the *one-year* defamation statute, we must instead apply *one* of the *two* limitations periods, which, under Pennsylvania law, govern negligence actions. The general limitations statute for tort claims, 12 P.S. § 31, provides for a

six-year limitations period, but personal injury actions are governed by a separate statutory provision, 12 P.S. § 34, which establishes only a two-year limitations period.

As is readily apparent from our discussion with respect to the time when the cause of action arose, *supra*, pp. 440–441, (footnote 4), our application of either a two-year *or* a six-year limitations period will result in a finding that the Bulkin complaint was timely filed. Therefore, we need not decide *which* of the two limitations periods for tort actions, the *two year* period of 12 P.S. § 34, or the *six-year* period of 12 P.S. § 31, should be applied; for purposes of ruling upon the Motion to Dismiss, we find it sufficient that *one* of these tort limitations statutes, rather than the one-year defamation statute, will govern this action. Accordingly, we hold that the complaint was timely filed.

Indeed, on the record presently before us, we find ourselves *unable* to decide whether 12 P.S. § 31 or 12 P.S. § 34. should be applied to the Bulkin complaint; we are, however, satisfied that one of these two statutes certainly must control. Based upon our review of the allegations contained in plaintiff's complaint, and again, mindful of the requirement that such allegations be read broadly in plaintiff's favor for purposes of the Motion to Dismiss, (see cases cited *infra*) we hesitate to reach an issue which is not essential to our disposition of the Motion, namely, whether the complaint should be classified as a personal injury action within the meaning of the two-year limitations statute, 12 P.S. § 34.[13] Whether or not this action is one brought to recover damages for injuries wrongfully done to the person, as required by the terms of 12 P.S. § 34, would seem to turn upon

facts yet to be established, and we will therefore abstain from deciding an issue which is neither ripe for decision, nor critical at this stage of the litigation.

■ Our threshold decision to apply the limitations statutes of Pennsylvania, rather than those of New Jersey, disposes of defendant's suggestion that we must directly apply the one-year period established by the New Jersey statute of limitations for defamation actions, 2A N.J.S.A. § 14–3 (1952). That New Jersey limitations statute could now become relevant to this action only indirectly through application of the Pennsylvania "borrowing" statute, which provides as follows:

> When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth.

12 P.S. § 39 (1953). For purposes of determining whether the borrowing statute applies to the instant action, our inquiry must be two-fold: (1) where did the cause of action arise? (2) if the cause of action arose in another state, *is it fully barred by the laws of that jurisdiction? See Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,* 372 F.2d 18 (3d Cir. 1966); *Prince v. Trustees of University of Pennsylvania,* 282 F.Supp. 832 (E.D.Pa. 1968). As applied to our case, plaintiff's claim will be barred by the Pennsylvania borrowing statute, only if *First,* his cause of action arose in New Jersey, *and Second,* his cause would be *"fully barred"* in that state.

We have declined to speculate, upon the record before us, as to which state has superior contacts with this action, in con-

---

**13.** We note that Bulkin arguably falls within the purview of the two-year period applicable to personal injury actions, by virtue of the allegations in his Complaint of "mental agony", "mental pain", and "stress of mind". He has, however, also pleaded economic injuries, due to difficulties in obtaining employment, attributable to defendant's alleged negligence. We do not, however, view these allegations of pain and stress· as necessarily requiring the application of the two-year limitations period. *See,*

*Jones v. United Gas Improvement Corporation,* 383 F.Supp. 420, 430–431 (E.D.Pa.1974). (In a civil rights action involving employment discrimination, this Court applied the general six-year limitations statute, 12 P.S. § 31, rather than the two-year limitations statute applicable to personal injury actions, 12 P.S. § 34, even though that complaint, paragraph 29, included allegations of "severe mental pain and suffering and emotional injury".)

nection with a determination of the controlling substantive law. Similarly, we will not now make a determination as to the locus of *origin of the action,* for purposes of applying the borrowing statute. We believe that such a decision becomes academic, because of our view that the *second* criterion of the borrowing statute cannot be met; the borrowing statute will not be applied, regardless of whether or not the cause of action arose in New Jersey.

The second test under the borrowing statute would require us to find that the cause of action is fully barred in New Jersey; we refuse to so find, since we have concluded that a New Jersey court, if faced with the facts before us, would decide as a matter of substantive law that the pleadings would permit application either of a two-year, or a six-year statute of limitations for negligence, and not a one-year defamation time limit.

Under New Jersey law, the limitations periods which might arguably be applied to this cause of action parallel those of Pennsylvania. In addition to a one-year limitations period for defamation actions, 2A N.J.S.A. § 14–3, New Jersey has established a two-year period for personal injury actions, 2A N.J.S.A. § 14–2, as well as a general six-year limitations period for other tortious injuries, 2A N.J.S.A. § 14–1. Having concluded that under New Jersey law the action is one for negligence, we believe that the courts of that state would apply either the two-year or the six-year period; for borrowing act purposes, in neither case would the time period be longer than that established by the limitations statutes of Pennsylvania for this cause of action. Since the complaint was filed within two years, the action could not possibly be regarded as "fully barred" under New Jersey law, and, consequently, the Pennsylvania borrowing statute has no application.[14]

14. We need not decide whether the words "cause of action", in the borrowing statute, are to be construed in accordance with the substantive law of the state whose law will be controlling in determining the rights and liabilities of the parties. Our determination that the

## V. CONCLUSION

For the reasons set forth in this opinion, we hold that, irrespective of the eventual application of the substantive law of Pennsylvania or of New Jersey in this matter, plaintiff's cause of action in both forums would be construed as one sounding in negligence. Hence, the Pennsylvania statutes establishing either a two-year or a six-year period of limitations are applicable, rather than the one-year Pennsylvania defamation statute. Moreover, in light of our ruling that the Pennsylvania borrowing statute is not applicable under the circumstances, as it could not alter the result by application of New Jersey law, we conclude that the complaint is timely filed. Accordingly, defendant's motion to dismiss will be denied, and an appropriate Order will be entered.

plaintiff has pleaded a cause of action in negligence, under both the law of Pennsylvania and of New Jersey, eliminates any need to decide whether the "cause of action" is to be determined by the laws of Pennsylvania or New Jersey.