Joan L. MANN, Plaintiff,

v.

The J.E. BAKER COMPANY, Donald Hennel, Gary W. Kyson, Defendants.

Civ. A. No. 3:CV–89–1749.

United States District Court,
M.D. Pennsylvania.

March 21, 1990.

William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, P.C., Lancaster, Pa., and Robert L. Sawicki, Philadelphia, Pa., for plaintiff.

John B. Langel, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

Plaintiff, Joan L. Mann, instituted this action when she was discharged from her employment with defendant, J.E. Baker Co. (J.E. Baker). Pursuant to Fed.R.Civ.P. 12(b)(6), defendants, J.E. Baker, Donald Hennel, J.E. Baker's Vice–President, and Gary W. Kyson, Director of Sales for its Cement Division, have moved to dismiss Counts V, VI, VII, and VIII of the complaint. Counts I–IV allege unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. 951 *et seq.* (Purdon 1964 & Supp.1989) ("PHRA"). The remaining counts, the subject of defendants' motion, are four pendant state claims predicated upon Pennsylvania common law. Defendants argue that these counts are precluded by the PHRA and, in any event, fail to state claims upon which relief can be granted. We can grant defendants' motion only if plaintiff can prove no set of facts in support of her claims. *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987).

According to the complaint, plaintiff was hired in July of 1987 by defendant J.E. Baker as Manager of Customer Services for the Cement Sales Division (complaint, ¶ 9). In February, 1988, defendants Kyson and Hennel conducted an appraisal of plaintiff's performance resulting in a favorable evaluation. (*Id.*, ¶ 10). Plaintiff received a bonus in April, 1988, in recognition of her services, (*id.*, ¶ 11), and was subsequently provided with an expense paid trip to Hawaii in May. (*Id.*, ¶ 12). Then, on or about May 20, 1988, plaintiff was discharged from her employment because she did not "fit." (*Id.*, ¶ 13). Upon her discharge, plaintiff's former position was filled by a male. (*Id.*, ¶ 15). Plaintiff was not charged with having violated any of J.E.

Baker's rules or of having engaged in any misconduct during the time of her employment. (*Id.*, ¶ 14).

*The Preclusive Effect of the PHRA.*

■ Defendants argue that all of the challenged counts are precluded by the PHRA. In part, the PHRA provides that an employer cannot discharge an employee or otherwise discriminate against her because of sex. 43 Pa.Stat.Ann. 955.[1] Recently, in *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989), the Pennsylvania Supreme Court held that a common law action for sexual discrimination could not be maintained when the plaintiffs had failed to pursue their remedy for the same offense under the PHRA. *See also Miller–Nuss v. Service America Corporation*, 1990 WL 2801, Lexis 342 (E.D.Pa.) (wrongful discharge claim under Pennsylvania law dismissed when based upon violation of Title VII). Defendants contend that the common law counts are based upon the same acts of sexual discrimination as the PHRA count and are therefore precluded.

Defendants argue this point tenaciously and we fail to understand why. It is apparent that the challenged counts are not based upon a claim of sexual discrimination and hence are not precluded by *Clay, supra,* and similar cases. The counts will be discussed below in more detail when dealing with them on their merits. It is sufficient to note here that they are based upon alleged negligent conduct in evaluating plaintiff's job performance, alleged misrepresentations concerning the quality of her work and actions undertaken with the intent to harm the plaintiff. These claims are not actionable under the PHRA and hence are not precluded by it. We will therefore evaluate them on the merits. *See McWilliams v. AT & T Information Systems, Inc.*, 728 F.Supp. 1186 (W.D.Pa. 1990) (the court will address a common law

cause of action for wrongful discharge when the PHRA does not provide a remedy).

*Claim for Negligent Evaluation (Count V).*

■ Count V is based upon a negligent evaluation of plaintiff's job performance. Plaintiff alleges that when defendants voluntarily undertook to evaluate her performance, they were under a duty to exercise reasonable care in doing so. (complaint, ¶ 28). They breached that duty by giving her a favorable evaluation which led her to continue with her previous work habits. (*Id.*, ¶ 29). Plaintiff was subsequently discharged, but if defendants had given her a more accurate evaluation, she could have corrected any deficiencies and retained her position. (*Id.*, ¶¶ 30 and 31).

In pursuing this claim, plaintiff has relied upon *Quinones v. United States*, 492 F.2d 1269 (3d Cir.1974), interpreting the Pennsylvania common law of negligence as imposing liability upon those who gratuitously undertake a course of conduct resulting in damage to another, and *Bulkin v. Western Kraft East, Inc.*, 422 F.Supp. 437 (E.D.Pa.1976). She also relies upon the dissent in *Haas, infra.* In rebuttal, the defendants cite the majority opinion in *Haas,* along with other cases, for the proposition that there is no cause of action for negligent evaluation in the employment context. *See Haas v. Montgomery Ward & Co.*, 812 F.2d 1015 (6th Cir.1987); *Waldschmitt v. Consolidated Rail Corp.*, 1989 WL 79356, Lexis 8090 (E.D.Pa.); *Lang v. Proctor & Gamble Distributing Co.*, 1989 WL 100773, Lexis 13151 (S.D. Tex.).

Plaintiff's position is an interesting and plausible one but we must reject it. To begin with, *Quinones* and *Bulkin* are inapposite to the case at bar. Those cases recognized a cause of action under Pennsyl-

---

1. Specifically, section 955(a) of the PHRA provides, in pertinent part, that it shall be an unlawful discriminatory practice:
    (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicap or disability of any individual to refuse to hire or

employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment, if the individual is the best able and most competent to perform the services required.

888

vania law for negligent maintenance of employment records by a former employer resulting in harm to the plaintiff when the records were divulged to prospective employers. In *Quinones,* the Third Circuit based its recognition of the cause of action, in part, on Pennsylvania's willingness to impose liability upon one who, without any duty to do so, nevertheless renders a service to another and does so negligently. *Bulkin* followed *Quinones.* Plaintiffs in those cases, however, were not seeking a remedy for the termination of an employment relationship. Such a relationship had already come to an end with their former employers and had not yet begun with a new one. The situation is presented here, however, as it was in *Haas.* And, as in *Haas,* it requires us to resolve whether plaintiff can pursue a negligence claim in connection with the termination of her contractual relationship with J.E. Baker.

That question was answered in the negative under Michigan law by the majority in *Haas.* In that case, the defendant was charged with negligently failing to compare the plaintiff's prior, favorable evaluations to her final and lower evaluation before discharging her. Characterizing this claim "as a breach of the company's contractual duty to exercise reasonable care ...", 812 F.2d at 1016, the majority rejected it, construing Michigan case law as requiring a duty separate and distinct from the breach of contract before a tort action will lie. A crucial part of the court's reasoning was as follows:

> Here, Haas' position with the company was the only reason she was evaluated. Without the employment contract the evaluation would never have occurred. There would be no independent action in tort for negligent evaluation causing her discharge. Therefore ... she has no valid claim in tort.

812 F.2d at 1017.

The dissenting judge disagreed with the majority's characterization of Michigan law. He concluded that Michigan would recognize a cause of action in tort for failing to take reasonable care in the performance of a contract. But more significantly from the instant plaintiff's standpoint, the dissent offered this analysis, which plaintiff here contends is in full accord with Pennsylvania law:

> Michigan law sets forth a duty to perform *any* undertaking with reasonable care, whether a contract governs that performance or not. Thus, negligent performance, i.e., misfeasance, of a contract is not only a breach of the duty created by the contract, but also a breach of the separate duty to perform *any* "promise in a careful and skillful manner without risk of harm to others." *Hart* [*v. Ludwig,* 347 Mich. 559, 565, 79 N.W.2d 895, 898 (1956)].

812 F.2d at 1018 (brackets added) (emphasis in original). Plaintiff carefully emphasizes that she does not consider the negligent evaluation a breach of contract. The claim arises simply from the breach of the duty to conduct the evaluation properly. If we were inclined to find in plaintiff's favor, that would be one way of distinguishing *Haas* since the plaintiff in that case apparently viewed the negligent evaluation as a breach of contract. However, this distinction is irrelevant to our analysis.

We need not determine the correct interpretation of Michigan law. We side with the majority opinion in *Haas* because it reflects, in any event, an accurate statement of Pennsylvania law.

In general, Pennsylvania courts have been reluctant to permit tort recovery for contractual breaches. *See, e.g., Glazer v. Chandler,* 414 Pa. 304, 308–09, 200 A.2d 416, 418 (1964). This reluctance is not, however, iron-clad. Failure to perform a duty imposed by contract *may,* in limited circumstances, constitute a tort. *See Brown v. Moore,* 247 F.2d 711, 716 n. 6 (3d Cir.), *cert. denied,* 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957). A tort claim may be maintained only when "the wrong ascribed to defendant ... [is] the gist of the action, the contract being collateral." *Closed Circuit Corp. of America v. Jerrold Electronics,* 426 F.Supp. 361, 364 (E.D.Pa.1977) (citing 1 C.J.S. Actions § 46).

*Wood & Locker, Inc. v. Doran And Associates,* 708 F.Supp. 684, 689 (W.D.Pa.1989) (emphasis and brackets in original).

We cannot say here that the negligent evaluation claim is the gist of the action. To the contrary, plaintiff is attempting to use this claim to enforce rights arising solely from what she must admit was a contractual relationship with J.E. Baker. See *Darlington v. General Electric,* 350 Pa.Super. 183, 189, 504 A.2d 306, 309 (1986) ("Every employment relationship is also a contractual relationship. Even at-will employment is formed by contract."). Plaintiff claims that her discharge—the termination of her contract of employment with the company—followed from the negligent evaluation and that she would not have been discharged if the evaluation had been done properly. The damages sought are in the form of compensation such as salary, bonuses and fringe benefits she would have received if the contract had continued in force.

Once the essential nature of the relationship is recognized, the fatal difficulty for the plaintiff is that, absent a showing otherwise, her employment could have been ended by J.E. Baker at any time for any reason if not proscribed by statute or public policy. In *Paul v. Lankenau Hospital,* —— Pa. ——, 569 A.2d 346 (1990), the Pennsylvania Supreme Court recently reaffirmed its refusal to abrogate judicially the long entrenched doctrine in Pennsylvania of employment at will. Rejecting a jury determination that a fired employee had the permission of his employer to remove some property from his place of employment and that the employer was therefore estopped from firing him for theft, the court stated:

> [A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.

*Id.* at ——, 569 A.2d at 348 (quoting *Clay, supra,* 522 Pa. at 89–90, 559 A.2d at 918) (brackets added).

Significantly, the court stated that "our law does not prohibit firing an employee for relying upon an employer's promise." —— Pa. at ——, 569 A.2d at 348. Against this backdrop, we do not believe we can simply transfer the *Quinones* rationale into an area of the law dealing with the termination of the employment relationship. The Pennsylvania Supreme Court looks with disfavor on any judicial attempt to limit the employment at will doctrine. We conclude that plaintiff has no cause of action under Pennsylvania law for negligent evaluation in the employment context. *See also Waldschmitt, supra.* Accordingly, count V will be dismissed.

### Claim for Fraudulent Misrepresentation (Count VI).

■ Count VI is a fraudulent misrepresentation claim also arising from the performance evaluation in February of 1988. Plaintiff alleges that, if the evaluation was erroneously favorable to her, then defendants made it knowing it to be so, and that plaintiff relied upon this evaluation to her detriment by continuing with her past performance. To state a cause of action for fraudulent misrepresentation, plaintiff must allege that defendants: (1) misrepresented a material fact; (2) knew it to be false; (3) intended to induce plaintiff to act or refrain from acting; (4) plaintiff justifiably relied on the misrepresentation; and (5) plaintiff suffered damages as a proximate result of the misrepresentation. *See Kuehner v. Parsons,* 107 Pa.Commw. 61, 527 A.2d 627 (1987).

■ We will dismiss this count because we believe that, as a matter of law, plaintiff could not have justifiably relied upon the statements made to her during her evaluation. According to the complaint, those statements were that "she was a valued employee with a future with ... J.E. Baker" and that her "department was the most organized that it had ever been as a result of her efforts." (complaint, ¶ 29). In *Whelan v. Careercom Corp.,* 711

F.Supp. 198 (M.D.Pa.1989), we rejected a similar fraud claim based upon substantively similar statements. In *Whelan,* the alleged misrepresentations had been made prior to the start of the plaintiff's employment while here they were made after the employment relationship had begun. Nevertheless, both cases are the same in that no justifiable reliance could be placed upon the statements.[2] Our analysis in *Whelan* was as follows:

> The second basis for the misrepresentation claim is defendant's false statement that its "executive employees were stable and secure." (complaint, ¶ 8). In the past, employees have been unsuccessful in using this type of allegation to support a breach of contract claim. *See Murray v. Commercial Union Insurance Co.,* 782 F.2d 432, 435 (3d Cir.1986) (assurances of a "future and lifetime career" and of employment for as long as it was mutually agreeable "are too vague to create employment for a term.") We believe it is also insufficient to sustain a misrepresentation claim.... [I]n a fraud action brought under Pennsylvania law, "[m]isrepresentation must be distinguished from mere 'puffing.'" [citation omitted]. The latter is not actionable. [citation omitted].... We ... conclude as a matter of law that, in the context of preemployment discussions, a general statement that a business's executives enjoy a stable and secure tenure is neither an actionable misrepresentation nor one upon which an employee could justifiably rely. This conclusion is supported by *Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286 (8th Cir.1988).

711 F.Supp. at 201 (brackets added).

Count VI will be dismissed.

### *Claim for Wrongful Discharge (Count VII).*

■ Count VII alleges that plaintiff's discharge was based on Kyson and Hennel's specific intent to harm her, and was also not in the interest of defendant J.E.

Baker (complaint, ¶ 39). Plaintiff relies upon the specific intent to harm exception to the employment-at-will doctrine elaborated upon in the leading case in this area, *Tourville v. Inter–Ocean Insurance Co.,* 353 Pa.Super. 53, 508 A.2d 1263 (1986). Defendants counter that the more recent supreme court opinion in *Clay, supra,* indicates that there is no such cause of action in Pennsylvania.

In *Whelan,* relying upon *Tourville,* as did other district courts, we recognized a cause of action based upon a specific intent to harm, but we must agree with defendants that *Clay,* and the more recent decision in *Paul, supra,* cast serious doubt upon whether such a cause of action exists in Pennsylvania. In *Clay,* as quoted above by way of *Paul,* the state supreme court flatly stated that there was no common law cause of action for wrongful discharge except in the limited circumstances where the discharge would violate a clear mandate of public policy. There was no mention, as there was in *Tourville,* of a second exception when there was a specific intent to harm the employee. Further, Chief Justice Nix, in a concurring opinion, specifically stated that the Superior Court had erred in recognizing a cause of action for wrongful discharge. 522 Pa. at 96, 559 A.2d at 923. Chief Justice Nix's remarks received general approval from the majority in *Paul* to the extent they were applicable to wrongful discharge actions not involving public policy. *See also McWilliams, supra,* (refusing to rely upon the specific intent to harm exception in rejecting plaintiff's wrongful discharge claim).

We need not decide this issue. Plaintiff has not satisfied the specific intent to harm exception in any event. In *Whelan,* we set forth that exception as follows:

> First, the plaintiff could set forth facts showing "disinterested malevolence" on the part of the employer; that is, "that there was no proper interest involved in the malevolent act...." ... Second, the

---

**2.** It is also irrelevant that in the instant case these statements were placed on an appraisal form which also may have contained instructions to the individual defendants to conduct the evaluation in an objective manner. This did not change the nature of the statements or alter plaintiff's at will status.

plaintiff could allege that the discharge was done with an "ulterior purpose". Under this alternative, a plaintiff could recover even if the discharge was done with sufficient reason if, nevertheless, it was done "to harm the other party." *Whelan, supra,* 711 F.Supp. at 203 (quoting *Tourville,* 353 Pa.Super. at 56, 57, 508 A.2d at 1265, 1266).

Plaintiff contends that her allegations that she was considered a "valued employee" and that the discharge was against the interests of J.E. Baker, (complaint ¶ 39), satisfy the intent to harm exception. We disagree. These allegations do not establish any specific intent to harm plaintiff. At best the first allegation would go to a general intent to harm which is not sufficient under Pennsylvania law. *Whelan, supra.* Relying upon *Beyda v. U S Air, Inc.,* 697 F.Supp. 1394 (W.D.Pa.1988), plaintiff also argues that we can look to the circumstances surrounding the discharge, including the fact that, as alleged in the complaint, similarly situated employees were not dealt with as harshly. (complaint, ¶ 41). We disagree. In *Tourville,* the superior court did state that the surrounding circumstances could be examined but stressed that these had to consist of the acts of the employer "which occurred shortly before, contemporaneous with, and shortly after the discharge itself." 353 Pa.Super. at 58 n. 10, 508 A.2d at 1266 n. 10. Treatment of similarly situated employees would not fit within this time frame and would not bear a direct relationship to the treatment of the plaintiff, which we think is necessarily implied by footnote ten. Additionally, to engage in the examination requested by plaintiff would require us to examine the fairness or appropriateness of the discharge. Although the plaintiff would understandably disagree, these are matters which the Pennsylvania Supreme Court has decided should generally not be subject to judicial inquiry. Count VII will be dismissed.

*Claim for Interference with Existing Contractual Relationship (Count VIII).*

■ Count VIII alleges that plaintiff "had an existing financially beneficial employment relationship with" J.E. Baker, (complaint, ¶ 44), and that defendants Hennel and Tyson intentionally interfered with that relationship by discharging plaintiff. (*Id.,* ¶ 45). They are alleged to have acted against the interests of J.E. Baker by doing so. (*Id.,* ¶ 46).

Defendants first attack this count on the basis that there was no contractual relationship between the parties to be interfered with. As the plaintiff herself pleaded it, there was merely a beneficial employment "relationship." We have already pointed out that even at-will employment is contractual in nature. *See Darlington, supra.* Accordingly, this argument must be rejected.

Citing among other cases, *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 519 A.2d 997 (1987), defendants next argue that the count is defective for lack of a third party actor. Both Hennel and Kyson are agents of the corporate defendant and acted on its behalf in terminating plaintiff. The tort of interference with an existing contractual relationship is directed to an interfering third party, not authorized agents through whom the corporate defendant was acting. Hence, count VIII must be dismissed. Plaintiff counters that this general rule is not applicable when the agents were attempting to harm the plaintiff and when they were acting against the interests of the corporation. Plaintiff cites in her support *Avins v. Moll,* 610 F.Supp. 308 (E.D. Pa.1984).

In *Avins,* the court did note the two exceptions listed by plaintiff. Specifically, the court stated that a corporate agent could be liable for inducing breach of an employment contract if he acted with "actual malice toward the plaintiff, or the [agent's] conduct is against the interest of the corporation." 616 F.Supp. at 318 (brackets added) (citing *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974)).

We have already decided that plaintiff has failed to state a claim under the intent to harm exception to Pennsylvania's employment at will doctrine. We think that

this would dispose of any claim against the individual defendants in this regard as well. As to their alleged actions against the interest of the corporation, the Pennsylvania Supreme Court did discuss it in *Geary* but solely in connection with plaintiff's claim in that case that he was wrongfully discharged because the concern he raised about the company's product was in the company's best interests. Here the plaintiff's claim is that her discharge was not in the company's best interests simply because she was a competent employee. Substantively, the claims are different because Geary was asserting a far broader interest. We make no decision whether we would recognize plaintiff's cause of action in another context, but we reject it here.

*The Demand For Jury Trial.*

Defendants move to strike the demand for jury trial because plaintiff has no right to a jury trial on her remaining claims under Title VII, *see Davis v. Devereux Foundation,* 644 F.Supp. 482 (E.D.Pa. 1986), or the PHRA. *See Murphy v. Cartex Corp.,* 377 Pa.Super. 181, 546 A.2d 1217 (1988). Plaintiff contends that, even if her common law claims are dismissed, recent decisions indicate that she still has a right to a jury trial in a Title VII case. She cites *Beesley v. Hartford Fire Insurance Co,* 717 F.Supp. 781 (N.D.Ala.1989) and 723 F.Supp. 635 (N.D.Ala.1989) (on reconsideration). We adhere to the belief that there is no right to a jury trial in Title VII cases. *See Gulick v. Borough of Penbrook,* No. 88–786 (M.D.Pa. March 13, 1990) (Rambo, J.) (rejecting *Beesley*).

We will issue an appropriate order.

### ORDER

AND NOW, this 21st day of March, 1990, upon consideration of Defendants' motion to dismiss counts V through VIII of the complaint, it is ordered that:

1. The motion is granted.

2. Counts V through VIII of the complaint are hereby dismissed.

3. Plaintiff's demand for a jury trial is hereby stricken.

4. Plaintiff's motion to file a supplemental memorandum is denied.