Alfred **AVINS**

v.

Clarence R. **MOLL, et al.**

Alfred **AVINS**

v.

Clarence R. **MOLL, et al.**

Alfred **AVINS**

v.

F. Eugene **DIXON, Jr., et al.**

Civ. A. Nos. 79–0089, 79–2089 and 81–1248.

United States District Court, E.D. Pennsylvania.

Sept. 6, 1984.

Alfred Avins, pro se.

Franklin Poul, Philadelphia, Pa., John F. Cramp, Media, Pa., for defendants Clarence R. Moll, Widener College, Inc., The Delaware Law School of Widener College, Inc. and the Honorable John B. Hannum.

## MEMORANDUM

CAHN, District Judge.

These actions, consolidated for trial purposes, are brought by Alfred Avins ("Avins"), the founder and former Dean of Delaware Law School of Widener University ("DLS").[1] Avins seeks damages and equitable relief against various individual and corporate defendants, whom Avins claims wrongfully ousted him from his position as DLS Dean and faculty member.

These cases have a tortuous and protracted history. For nearly a decade, Avins has engaged in litigation against one or

more of the defendants in the consolidated actions: Widener University ("Widener"), DLS, Arthur Weeks, Dean of DLS at various relevant times, Dr. Clarence Moll, President of Widener and DLS at various relevant times, and F. Eugene Dixon, Jr., a trustee of Widener and DLS at various relevant times. Eight such cases have been brought by Avins. Simply put, all the actions arose as a result of the affiliation of DLS with Widener in July of 1975. Avins has sued certain individual and corporate defendants in Delaware state court, in the Federal District Court for the District of Delaware, in New York state court, and in this judicial district.

The factual background of the consolidated actions have been thoroughly described by other members of the judiciary who have adjudicated Avins' claims. *See Avins v. White*, 627 F.2d 637 (3d Cir.1980), *cert. denied*, 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980); *Plechner v. Widener College, Inc.*, 418 F.Supp. 1282 (E.D.Pa. 1976), *aff'd* 569 F.2d 1250 (3d Cir.1977);[2] *Avins v. Hannum*, 497 F.Supp. 930 (E.D. Pa.1980); *Avins v. Widener College, Inc.*, 421 F.Supp. 858 (D.Del.1976). Accordingly, I will omit a detailed factual statement from this Opinion. Nevertheless, a brief chronological history of the Avins-DLS dispute will place the instant action in its proper perspective.

Avins founded DLS in 1971. At its inception, DLS was an unaccredited law school. That is, the American Bar Association ("ABA"), had not certified the school. In most states, graduation from an ABA-accredited school is a prerequisite for law students who wish to sit for the bar examination.

It was therefore necessary for DLS to obtain ABA accreditation before graduation of the first class of DLS students in

---

**1.** For the purposes of this Opinion, the three cases will be referred to as "the consolidated actions."

**2.** Apparently, Widener College is now known as Widener University. For the purposes of this Opinion, the distinction is unimportant, and

both will be referred to as "Widener." Likewise, references to DLS include Delaware Law School, Delaware Law School of Widener College and Delaware Law School of Widener University, notwithstanding the official name of the law school at the time.

1975. Avins, as Dean of DLS, sought to obtain the ABA "seal of approval." Unfortunately, the Bar Association was reluctant to certify DLS. Relations between Avins and the ABA accreditation officers grew acrimonious, and Avins was ultimately uncooperative in the attempt to obtain accreditation for DLS. Avins was forced to resign as Dean of DLS in September of 1974. He remained a member of the DLS Board of Trustees and of the DLS faculty, and was designated "Dean Emeritus" of DLS.

During the accreditation process, the ABA suggested that affiliation of DLS with an established college or university would markedly approve DLS's chances for obtaining accreditation. In 1975, the DLS Board of Trustees voted to affiliate with Widener. Provisional ABA accreditation was obtained before the first DLS class graduated. DLS is now permanently accredited by the ABA.

Avins opposed the decision to affiliate DLS with Widener. Since the time of the affiliation decision, he has litigated against DLS, Widener, officials and trustees of both schools, and ABA accreditation committee members. In 1976, DLS sought to dismiss plaintiff as a professor at DLS, because his conduct conflicted with the interests of the law school. Hearings were eventually held early in 1978, at which time he was discharged as a DLS faculty member. In August of 1978, Widener chose not to reappoint Avins to the DLS Board of Trustees.

Prior to his dismissal as a DLS professor, Avins became one of the incorporators of District of Columbia law school in 1977. The institution was designed as a "weekend" law school, where students could attend classes during weekend periods, and not interfere with their weekday occupations. As the name implies, the school was situated in the District of Columbia. Renamed Capitol District Law School, the

school was unable to obtain a license empowering it to grant degrees in the District of Columbia. Avins then began another law school in Alexandria, Virginia, which he named Northern Virginia Law School. Later, plaintiff started a division of Northern Virginia in Fall River, Massachusetts, which he named the South-East Massachusetts, Rhode Island, Avins Law School. Both schools are "weekend" law schools, like the now-defunct Capitol District Law School. Neither is accredited by the ABA.

As previously discussed, Avins has participated as intervenor or plaintiff in several actions in this district and in other jurisdictions challenging the affiliation of DLS with Widener. In the course of his litigation against the instant defendants, he has sought to set aside the DLS–Widener merger, to obtain a lifetime position for himself at DLS, and to compel DLS and Widener to grant him various honorary positions. Avins has also charged certain defendants with defamation, invasion of privacy and intentional infliction of emotional and physical injuries. Finally, he claims that defendants violated the federal antitrust laws by monopolizing the market of law students from, and located in, Delaware, sections of Pennsylvania, and New Jersey, and by conspiring to prevent Avins from starting another law school.

Defendants have moved for summary judgment in the consolidated actions. For the reasons set forth in this Opinion, defendants' motion for summary judgment will be granted. Judgment will be entered in favor of all defendants and against the plaintiff, and other outstanding motions in the consolidated actions will be disposed of.

## DISCUSSION

1. *Antitrust Claims.*[3]

 Avins contends that the defendants have violated the federal antitrust laws by

---

**3.** Avins has brought claims under the Sherman Act, 15 U.S.C. §§ 1–3, against the defendants in each of the consolidated actions. In the two earlier of the three actions, Civil Action Nos. 79–0089 and 79–2089, the antitrust claims are

the only issues remaining to be decided. In Civil Action No. 79–0089, Judge Brotman, sitting by designation, dismissed all counts in Avins' complaint other than the antitrust count, some with prejudice and some because the citizenship

deliberately thwarting his ability to compete in the marketplace for part-time law students. Avins claims that defendants viewed the District of Columbia Law School as a competitor for potential DLS students, and therefore attempted to hinder Avins' efforts to develop that institution. On this basis, plaintiff charges monopolization in violation of section 2 of the Sherman Act, and conspiracy to restrain trade in violation of sections 1 and 3 of that Act. 15 U.S.C. §§ 1–3. Because I have concluded as a matter of law that Avins is unable to state an antitrust claim against the defendants, judgment as to Avins' antitrust claims in the consolidated actions will be entered in favor of the defendants.

Regarding the alleged monopolization, Avins claims that the geographic market DLS dominates encompasses "Delaware, Pennsylvania south of Philadelphia, and New Jersey south of Camden." *Pretrial Statement With Respect to the First Cause of Action,* ¶ 5. Plaintiff offers no evidence to support his definition of this market. I disagree with Avins' lines of demarcation, which are obviously meant to exclude the Philadelphia area and more specifically, Temple Law School (Philadelphia) and Rutgers Law School (Camden), both of which have evening divisions like DLS. However, even if I accept Avins view of the geographic market, it is certainly true that potential students located in the DLS market have the option of attending other well-established institutions, such as Temple or Rutgers.

I am equally troubled by Avins' silence in failing to address the geographic locale of the District of Columbia Law School, which was located in Washington, D.C. In close proximity to that school are Catholic University's Columbus School of Law, Georgetown University Law Center, George Washington's The National Law Center, University of Baltimore School of Law, and University of Maryland School of Law. All are located in the District of Columbia or Baltimore, all offer evening law school curricula, and all were presumably "competitors" of the District of Columbia Law School. Nevertheless, Avins purports to confine the relevant geographic market to "Delaware, Pennsylvania south of Philadelphia, and New Jersey south of Camden."[4]

Notwithstanding Avins' failure to describe persuasively the market in which the District of Columbia Law School functions, he has also failed to set forth any facts which show that DLS achieved its allegedly monopolistic position in a predatory or deliberate manner.[5] *See United States v. E.I. Dupont de Nemours & Co.,* 351 U.S. 377, 393, 76 S.Ct. 994, 1006, 100 L.Ed. 1264 (1956); *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Berkey Photo, Inc. v. Eastman Kodak Company,* 603 F.2d 263 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). In fact, Avins asserts that "by reason of its geographic location, DLS has a monopoly of part-time legal education in its prime market." *Pretrial Statement With Respect to the First Cause of Action,* ¶ 6. Accordingly, even if DLS dominates a particular "market" in Avin's view, there is no evidence that such domination is due to any factor other than the geographical placement of the school.

I have likewise determined that defendants are entitled to summary judgment as to Avins' Sherman Act restraint of trade claims. Avins incorporates the remaining counts of his complaint into the restraint of

---

of the parties was not diverse. In Civil Action No. 79–2089, Judge Brotman dismissed certain counts with prejudice and Avins withdrew other counts.

**4.** I also agree with defendants that the District of Columbia Law School's "functional market" did not equate with that of DLS, Temple, Rutgers, and the Washington and Baltimore Law Schools mentioned above. District of Columbia Law School was a "weekend" law school, was unaccredited, and was unable to obtain degree-granting powers in the District of Columbia. The other schools listed provide both full and evening curricula, are accredited by the ABA, and possess degree-granting powers within their respective states.

**5.** Indeed, plaintiff has not set forth any fact tending to show that DLS possesses a monopolistic position in the market.

trade allegations, claiming that defendants' hostility towards him amounts to an antitrust violation which ultimately harmed his work at District of Columbia Law School. As defendants correctly note, however, Avins must show that defendants did injury to the competitive process itself, not merely inflict injury on a particular competitor. *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). In this regard, Avins has made no allegations of *per se* trade restraints such as price-fixing, division of markets or tie-ins. This being the case, Avins has the burden of demonstrating an unreasonable restraint of trade:

> Under the rule of reason analysis, the elements of restraint of trade are:
>
> (1) An agreement among two or more persons or distinct business entities;
>
> (2) which is intended to harm or unreasonably restrain competition;
>
> (3) and which actually causes injury to competition.

*Kaplan v. Burroughs Corp.,* 611 F.2d 286, 290 (9th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). A crucial determination, therefore, is *whether or not the alleged conduct of the defendant has impact upon competition in general, DeVoto v. Pacific Fidelity Life Ins. Co.,* 618 F.2d 1340, 1344 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206 [66 L.Ed.2d 89] (1980); *Kaplan v. Burroughs Corp.,* 611 F.2d at 291, *as '[i]t is the impact upon competitive conditions in a definable product market which distinguishes the anti-trust violation from the ordinary business tort.' Id.*

*Hayden Publishing Co., Inc. v. Cox Broadcasting Corp.,* 566 F.Supp. 503, 511 (E.D.N.Y.1983). Here, Avins' trade restraint allegations incorporate his causes of action for contract breach, injury to reputation, and other "ordinary business torts." Avins does not trace how defendants' actions affected competitive conditions, but rather, complains that those actions injured him personally.

Notwithstanding the deficiencies in Avins' restraint of trade allegations, I have also concluded that plaintiff cannot, as a matter of law, succeed in proving the "combination ..., or conspiracy" that is a necessary part of his Sherman Act trade restraint claim. *See* 15 U.S.C. § 1. It is clear that the defendants in the consolidated actions are sued due to their relationship with Widener and with DLS. All individual defendants are either trustees or employees of one or both institutions. DLS is, of course, a wholly-owned subsidiary of Widener. The Court of Appeals for the Third Circuit, as well as other courts of appeals, has previously determined that section 1 of the Sherman Act "does not reach a putative 'conspiracy' between a corporation and its employees." *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 893 (3d Cir.1981) (footnote omitted). That is, the relationship between the corporation and its employees cannot give rise to the requisite "concerted action" for a section 1 claim. *Id.* This precludes Avins' suggestion that a "combination" of certain unidentified "defendants" reduced Avins' ability to mold District of Columbia Law School into a viable competitor of DLS.

#### 2. *Second and Third Causes of Action*

Avins' second and third claims against defendants arise out of his discharge as DLS Dean and his ultimate termination as a DLS faculty member. In these claims, Avins complains that Weeks interfered with Avins' relationship with DLS by advocating the DLS–Widener affiliation, and by forcing Avins to resign as Dean during the ABA accreditation campaign. Avins alleges that Weeks acted as agent of the other defendants in performing these deeds. Avins also claims that Weeks further interfered with plaintiff by, *inter alia,* falsely testifying against Avins before a grievance committee, by preventing Avins' name from being placed on the school library, by criticizing the professorial abilities of Avins, and by scheduling meetings with Avins when Weeks knew Avins would be out-of-town.

In analyzing Avins' allegations, it is first appropriate to narrow his claims, due to the res judicata and collateral estoppel effects of prior litigation. The parties have reviewed the relevant legal principles of res judicata and collateral estoppel in their memoranda. The Court of Appeals for the Third Circuit has adhered to the view that state law rules of res judicata and collateral estoppel apply in diversity cases. *See Provident Tradesmens Bank & Trust Co. v. Lumbermen's Mutual Casualty Co.,* 411 F.2d 88, 94 (3d Cir.1969). Nevertheless, the majority rule is to the contrary, and calls for the application of federal law. *See, e.g., Hunt v. Liberty Lobby, Inc.,* 707 F.2d 1493, 1496 (D.C.Cir.1983); *Restatement (Second) of Judgments,* § 87. The parties in the instant case have manifested a willingness to apply federal principles of res judicata and collateral estoppel. I will therefore evaluate defendant's arguments by utilizing federal standards.[6]

██ As has been often stated, the three prong test for the application of res judicata to a given action requires (1) a final judgment in a court of competent jurisdiction in the earlier case; (2) the assertion of the same cause of action in the two cases at issue, and; (3) the presence of the same parties or their privies in both lawsuits. *See Haefner v. The County of Lancaster,* 543 F.Supp. 264, 265 (E.D.Pa. 1982), *aff'd,* 707 F.2d 1401 (3d Cir.1983). In recent times, however, the last of these three requirements has been abolished in the strict sense. The Court of Appeals for the Third Circuit, among other courts, has broadened the availability of res judicata to persons who were not parties to or in "privity" with parties in the earlier case. *See Bruszewski v. United States,* 181 F.2d 419 (3d Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). That is, where the same plaintiff sues in multiple suits on identical causes of action, defendants in the later suits who were not named

as defendants in the earlier suits are entitled to the benefit of res judicata so long as there is a close or particular relationship with the defendants in the earlier suit:

Where different plaintiffs sue the same defendant in successive suits, many courts have questioned the fairness of invoking *res judicata* against the defendant unless a significant relationship can be found between the plaintiffs. But where, as in this case, *res judicata* is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have, as indicated in the cases above cited, enlarged the area of *res judicata* beyond any definable categories of privity between the defendants.... We are in accord with this development of the law away from formalism which impedes the achievement of fair and desirable results.

*Bruszewski,* 181 F.2d at 422. The Court of Appeals later reaffirmed *Bruszewski,* holding in *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3d Cir.1972) that res judicata applies "where there is a close or significant relationship between successive defendants."

██ The doctrine of collateral estoppel, sometimes called "issue preclusion," serves essentially the same policy goals as res judicata—avoiding relitigation of the same claims, expense to litigants and inconsistent results. The rules of res judicata and collateral estoppel are often confused. The Court of Appeals for the Third Circuit has described the distinction between the doctrines as follows:

In the application of the *Bruszewski* doctrine, however, it is important that we be governed by the principle of the law rather than by the nomenclature affixed to it. Thus, the doctrine is sometimes called "collateral estoppel," see *Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co.,* 411

---

**6.** I note, as the parties correctly assert, that federal law, Pennsylvania law and Delaware law are substantially similar. I also agree with defendants' contention that the proper choice of law is federal, since the interest of the federal

courts in avoiding duplicative lawsuits and preserving the finality of their judgments is paramount to any state substantive issue presented by any of the cases previously brought by Avins.

F.2d 88, 92 (3d Cir.1969), because the plaintiff is indeed estopped from proceeding on the same cause of action against the new defendants. Use of the adjective "collateral" to characterize this form of estoppel grows out of the fact that the bar of the prior adjudication is not interposed directly, by parties to the prior suit, but indirectly, by new defendants, strangers to the earlier action. However, the *conceptual basis of such an estoppel is closer to that of pure res judicata than pure "collateral estoppel," because the bar is interposed on the theory that the second action is but an attempt to relitigate the same cause of action, although the names of the defendants may be different.* The distinction between this form of estoppel, *res judicata,* and "pure" collateral estoppel has been frequently emphasized:

Thus, under the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same *cause of action.* Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of *issues actually* litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit. *Lawlor v. National Screen Service Corp., supra,* 349 U.S. [322] at 326, 75 S.Ct. [865] at 867 [99 L.Ed. 1122 (1955)] (emphasis supplied).

*Gambocz,* 468 F.2d at 841. Unlike res judicata, collateral estoppel does not require a relationship between the party raising the defense and the party who successfully litigated the issue in a previous case. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 844–45 (3d Cir.1974). That is, collateral estoppel may be asserted against a party who has previously litigated a fact or issue unsuccessfully so long as the decision on that fact or issue was necessary for the determination of the prior case. *See*

*Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

■ With these standards in mind, I note that Avins has previously sued Widener, alleging that its agents (in particular, defendants Weeks and Moll), had interfered with his contractual and advantageous relationship with DLS. *See Avins v. Widener College, Inc.,* 421 F.Supp. 858 (D.Del.1976). Avins also included claims for invasion of privacy, defamation, and intentional infliction of emotional distress. After pre-trial motions had been adjudicated, the remaining issues in the action were tried before a jury. In one of its answers to special interrogatories, the jury found that neither Widener nor its agents had intentionally interfered with any contractual rights or advantageous business relations that Avins may have had with DLS. Many of the allegations made by Avins in the instant case were alleged by plaintiff in *Avins v. Widener,* and were explicitly or implicitly decided against Avins, by the jury determination that Widener and its agents had not interfered with any contractual or advantageous relations that Avins enjoyed with DLS. Specifically, I find that paragraphs 12, 12(a), 12(b), 12(c), 12(d), 12(e), 12(f), 12(g), 12(h), 12(i), 12(j), 12(k), 12(*l*), 12(m), 12(n), 12(*o*), and 12(p) of Avins' complaint, as those paragraphs apply to Widener and its agents, were decided against Avins by virtue of the jury verdict in *Avins v. Widener.* I therefore hold that Widener and the individual defendants, as alleged agents of Widener, are entitled to claim the res judicata benefit of the jury verdict in *Avins v. Widener.*

■ I also note that in another previous action, *Plechner v. Widener College, Inc.,* plaintiff once again challenged the legitimacy of the DLS–Widener affiliation.[7] The

---

**7.** It is true that in *Plechner,* Avins was not the original named plaintiff. Nevertheless, in a Bench Opinion dated April 23, 1979, Judge Brotman found that Avins' intervenor status bound

him to the result of the *Plechner* adjudication. Judge Brotman further found that in *Plechner,* Avins filed essentially the same complaint as the plaintiff in that case, selected and paid Plech-

decision in *Plechner* is reported at 418 F.Supp. 1282 (E.D.Pa.1976). In that case, Judge Becker determined that the affiliation of DLS with Widener was necessary in order for DLS to obtain affiliation from the ABA. The decision in *Plechner* contained specific findings that Dean Weeks' conduct during the period leading up to the accreditation and affiliation with Widener was not improper, and that Weeks did not act improperly toward Avins in urging affiliation, although such affiliation would necessarily deprive plaintiff of control over DLS. *See* 418 F.Supp. at 1293, 1296–1297. The allegations in paragraphs 12(c), 12(d), 12(e), 12(f), 12(g), 12(h), 12(i), 12(j), 12(k), 12(*l*), 12(m), 12(n), 12(*o*), 12(p), and 12(q) of plaintiff's second cause of action pertain to this point and include issues actually litigated and decided against Avins in the *Plechner* case. Once again, I hold that all defendants are entitled to the res judicata and collateral estoppel of the rulings made by Judge Becker in *Plechner. See Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir. 1972).

I also have determined that defendants are entitled to judgment as a matter of law as to Avins' claims of interference with contractual rights and advantageous relations. Avins has sued both DLS and Widener in this action. He has also sued, as individual defendants, Dixon, Moll and Weeks. Each individual defendant is sued in his capacity as a Widener trustee, DLS trustee, Widener employee, DLS employee, or a combination thereof. That is, each is alleged to have been an agent of Widener, DLS or both.

■ Though Delaware case law on the issue at hand is somewhat sparse, Pennsylvania has interpreted the relevant portions of the Restatement of Torts to give officers, directors and other supervisory personnel of a corporation a privilege to cause their corporate employer to terminate an employee. *Menefee v. Columbia Broadcasting System, Inc.,* 458 Pa. 46, 329 A.2d 216 (1974); *Roseman v. Hassler,* 382 F.Supp. 1328 (W.D.Pa.1974); *Geary v.*

*United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). The cases hold that claims by former employees against officers or other supervisory agents of former employers must fail because there is no *third party* who induced the breach. The agents are considered the same as the actual employer. *Wells v. Thomas,* 569 F.Supp. 426 (E.D.Pa.1983); *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 188 (E.D.Pa.1978). This principle may be viewed as a matter of common sense: a corporate officer acting within the scope of his corporate authority, would not thereby be guilty of tortious interference with plaintiff's contract with the corporation. Cases in other jurisdictions are consistent with the Pennsylvania cases discussed above. *See Leibowitz v. Szoverffy,* 80 A.D.2d 692, 436 N.Y.S.2d 451 (1981); *Countrywide Publications, Inc. v. Kable News Co.,* 74 A.D.2d 522, 425 N.Y. S.2d 15 (1980); *Bradburn v. Colonial Stores, Inc.,* 273 S.C. 186, 255 S.E.2d 453 (1979); *Kiyose v. Trustees of Indiana University,* 166 Ind.App. 34, 333 N.E.2d 886 (1975).

■ The overwhelming weight of authority, even in the corporate context, is that a corporate officer, director, trustee or other management level agent is *not* personally liable for inducing breach of contract unless the individual's *sole* motive in causing the corporation to breach a contract is actual malice directed toward the plaintiff, or the individual's conduct is against the interest of the corporation. *See Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). Plaintiff has not proferred any evidence as to the motives of Weeks, Moll and Dixon to meet this standard. In fact, the findings made by other judges who have evaluated Avins' claims run counter to any allegations of malice on the part of defendants.

■ For example, in the *Plechner* case, Judge Becker found *inter alia,* that affiliation with Widener was necessary for DLS to obtain accreditation, that Weeks was actually *chosen by Avins* as Avins' succes-

ner's counsel, and acted as co-counsel through-

out the lawsuit.

sor in 1974, that Weeks did not conceal his pro-affiliation views, that Weeks tried to calm the students during the affiliation period, and that at no time did Weeks engage in improper conduct regarding the affiliation decision. *See* 418 F.Supp. at 1287–96. I further find that Avins' complaints pertaining to Weeks' activities surrounding Avins' dismissal are unsupported by any evidentiary proffers by Avins. Avins alleges that Weeks falsely testified before the Grievance Committee that ultimately recommended Avins' dismissal, but offers no documentary evidence to support this charge. He has set forth no facts or documents to bolster this inflammatory accusation. Finally, I find Avins' proferred evidence as to his entitlement to sabbatical leave, summer session assignments, and other work assignments to be inadequate as a matter of law. *See* Complaint ¶¶ 12(r)-(u). Avins in no way shows that he was either entitled to any such rights or that the denial of his demands was solely for the benefit of Weeks.[8] Dr. Moll's affidavit demonstrates that no well-established policy existed at DLS regarding sabbatical leaves, and that sabbaticals are not automatically granted at Widener. Plaintiff likewise offers no proof to show that he was entitled to teach summer session courses, or that DLS was obligated to permit Avins to arrange his own teaching assignments.

▇ I am equally unpersuaded by plaintiff's third cause of action, which he claims is based on theories of *prima facie* tort and malicious prosecution. Once again, judgment will be entered in favor of defendants and against Avins as to Avins' third cause of action.

A claim for *prima facie* tort was developed primarily in New York, and most of the cases dealing with the doctrine are New York cases. *See generally* "Com-

ment Note—Prima Facie Tort", 16 A.L.R.3d 1191 (1967). Though Pennsylvania has not recognized the claim for prima facie tort, some Delaware cases have, in dicta, mentioned the doctrine. *See DeBonaventura v. Nationwide Mutual Insurance Co.*, 419 A.2d 942 (Del.Ch.1980) *aff'd*, 428 A.2d 1151 (Del.1981); *Kaye v. Pantone, Inc.*, 395 A.2d 309 (Del.Ch.1978); *Nix v. Sawyer*, 466 A.2d 407 (Del.Super.Ct. 1983).

In both *Kaye* and *Nix*, the Delaware Courts held that there can be no recovery for *prima facie* tort where there is objective justification for the conduct of the alleged tortfeasor, without any inquiry into allegations that the true motive behind the conduct was sheer malice. In *Nix* the court also stated that a *prima facie* tort will result only when the conduct alleged fails to conform to any specific category of tort; and that an allegation of *prima facie* tort is inconsistent with allegations that the same conduct of the defendants constituted defamation, abuse of process or malicious prosecution. 466 A.2d at 410. In *Kaye*, the court defined *prima facie* tort as "[the] intentional harm, infliction, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful and which acts do not fall within the categories of traditional tort." 395 A.2d at 313. Finally, plaintiff must usually show "specific . . . 'special' as distinguished from 'general' damages." 16 A.L.R.3d at 1215.

In this action, Avins has alleged a myriad of different tort theories of recovery, all of which overlap with his claim for *prima facie* tort. He has, moreover, failed to demonstrate in any specific manner his vague $50,000 damage claim. Finally, defendants have advanced numerous objective rationales for their actions towards Avins.[9]

---

**8.** Weeks is the only defendant implicated in ¶¶ 12(r)-(u) of the Complaint.

**9.** Avins also includes a claim for malicious prosecution in his third cause of action:

"[A] cause of action for malicious prosecution . . . is viewed with disfavor by the Delaware

courts, and therefore assessed with careful scrutiny." *Kaye v. Pantone, Inc.*, 395 A.2d 369, 372 (Del.Ch.1978). "Five requisites must coexist in order to render such an action viable: (1) the institution of civil proceedings; (2) without probable cause; (3) with malice; (4) termination of the proceedings in the ag-

### 3. Fourth Cause of Action

Avins claims that in August of 1978 defendants wrongfully removed him from his position as a DLS trustee, and have since then interfered with his status as a member of the DLS board of trustees. For the reasons set forth below, I have determined that Avins has shown no entitlement to his claimed position on the DLS board of trustees, and judgment as to Avins' fourth cause of action will be entered in favor of defendants.

When Widener acquired DLS, it became the law school's sole shareholder. Plaintiff claims that at the time of the acquisition, he was a "lifetime trustee" of DLS, with the tenure that the appellation implies. Nevertheless, none of the exhibits proffered by plaintiff support the assertion that he was guaranteed a position as any type of trustee on the DLS Board. Section 141(k) of the Delaware Corporation Law, 8 Del.C. § 141(k), provides that any director or directors may be removed by the holders of a majority of shares entitled to vote at an election of directors. Thus, plaintiff could have been removed from the DLS Board at any time in accordance with the terms of Section 141(k).[10]

Moreover, in various documents relating to the acquisition of DLS by Widener, the DLS trustees accepted the offer of an acquisition by Widener and implicitly and explicitly agreed that henceforth the Board of Trustees of DLS would be chosen by Widener. In the Memorandum of Agreement dated June 1, 1975, by and between Widener and DLS, paragraph 3 states the following:

"Widener shall acquire the newly authorized capital stock of Law School for its par value, shall elect a new Board of Trustees, which shall be made up of the Trustees of Widener, and shall assist the new Board in developing academic programs and the faculty in keeping with the best patterns of legal education."

By its very terms, then, the agreement contemplated the merger of the two institutions, with the DLS Board made up of the Widener trustees. Plaintiff has presented no evidence to contradict Delaware corporation law or the DLS–Widener merger agreement. Defendants are therefore entitled to judgment as to Avins' fourth cause of action.[11]

### 4. Sixth and Seventh Causes of Action

Plaintiff's sixth and seventh causes of action refer to promises allegedly made by various defendants in this action regarding books given by plaintiff to the DLS library, and duties performed by Avins in establishing the DLS library. Plaintiff claims the books belonged to him, not to DLS, and that he actually lent them to DLS. Avins alleges that he was entitled to certain "books" and "shelving" and that promises of his entitlement were made "in consideration of plaintiff's agreement to retire as Dean, and to continue his acquisition of books for the library ... and otherwise to help sort and arrange the library during the academic year 1974–75." *Complaint*, ¶ 20. Avins also claims that DLS and Widener failed to pay him for books

grieved party's favor; and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury." *Nix v. Sawyer*, 466 A.2d 407, 411 ( [Del.Super.] 1983).

In this case, it is undisputed that none of the defendants has ever brought suit against Avins. Accordingly, he does not state a cause of action for malicious prosecution.

10. I also note that the Minutes of June 8, 1974, apparently of a DLS Board meeting, do not reflect the election of any trustee, contrary to Avins' representations.

11. Avins styles count five of his complaint as a derivative claim on behalf of DLS, alleging that

Widener has engaged in "transactions" unfavorable to DLS. As Avins is not a member of the DLS Board, is not a DLS shareholder, and is not employed by DLS, I fail to see how he has standing to pursue this claim. Moreover, I find that the Widener-DLS affiliation has been found to be lawful, and that Avins has agreed to dismiss certain claims against Widener with prejudice which relate to alleged misuse of DLS funds. *See Plechner*, 418 F.Supp. 1282; *Defendants' Exhibits* D–34, D–36. *See also Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir.1972). Judgment will be entered in favor of defendants as to the fifth cause of action.

Avins obtained from the Library of Congress on behalf of DLS. Defendants argue that these claims are barred by the applicable statutes of limitations, and I agree.

It is well-established that in a diversity action a federal court sitting in Pennsylvania is required to apply the same statute of limitations as would a Pennsylvania state court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In most cases, a Pennsylvania Court would apply the statute of limitations of its forum. The single statutory exception to this rule arises where the cause of action accrues in a jurisdiction other than Pennsylvania. In such a case, a Pennsylvania state court would be compelled to follow Pennsylvania's "borrowing statute" which provides:

> The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.

42 Pa.Cons.Stat.Ann. 5521(b). The rule in *Guaranty Trust* obligates me to apply this choice-of-law principle. *Lustgarten v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 528 F.Supp. 1125, 1127–28 (E.D.Pa.1981).

In determining where plaintiff's cause of action accrued, I am bound by the decision of the Court of Appeals for the Third Circuit in *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20–21 (3d Cir.1966), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). In that case, the court ruled that a cause of action accrues for purposes of Pennsylvania's borrowing statute, "where as well as when the final significant event that is essential to a suable claim occurs." The court expressly rejected the argument that this question is governed by the conflict of laws doctrine enumerated in *Griffith v. United Air Lines*, 416 Pa. 1, 203

A.2d 796 (1964). The court stated in *Mack Trucks:*

> Under the Pennsylvania borrowing statute a court is required to apply the statute of limitations of the state where the cause of action arose without regard to any contacts of any other state with the parties and their prior dealings. And certainly neither the *Griffith* case nor any other of which we know suggests that the residence of the parties or the place of their earlier dealings before the claim became suable have any relevance to determining when or where the cause arose.

372 F.2d at 21. When Pennsylvania's borrowing statute is triggered, the *Griffith* significant interest analysis simply has no bearing on the question of where a plaintiff's claim accrued.

Applying the *Mack Truck* analysis to the facts of this action, it is clear that plaintiff's claim arose in Delaware. DLS is located in Delaware, and both Weeks and Avins, the principal adversaries in this dispute, were situated in Delaware throughout the time period 1974–75. Avins himself alleges that "Moll and other Widener officials induced *DLS and its officials* to breach the aforesaid contract." DLS and its officials were, of course, located in Delaware. I will therefore examine the applicable Delaware statute of limitations.

In his sixth cause of action, Avins has alleged as consideration for the alleged promises made by defendants his past and continued services to DLS in obtaining books for the library. Accordingly, the one-year limitation period for Work, Labor or Personal Services, 10 Del.C. § 8111, should be applied. In the alternative, the three-year period for recovery of damages set forth in 10 Del.C. § 8106 would be applicable.

In either case, Avins' sixth and seventh causes of action are barred by the statute of limitations. Avins filed his complaint in Civil Action No. 81–1248 on March 31, 1981.[12] The dates alleged in the sixth

---

12. As previously discussed, *see supra* at 314 n. 3, the only remaining claims in Civil Action

Nos. 79–0089 and 79–2089 are antitrust claims.

cause of action encompass the years 1974–75, and the latest date regarding books and shelving alleged by Avins is January, 1978, when he was "definitely told that [he] would have no jurisdiction over duplicates." As to the seventh cause of action, Avins alleges that "in August, 1978, upon being billed by the Library of Congress, [Avins] discovered [that his books had been incorporated into the DLS library]." *Complaint, ¶ 24.* However, this claim arose in 1974–75, when the books were actually delivered and placed into the DLS collection. Avins was certainly in a position to know when and whether books which he ordered from the Library of Congress were delivered to and incorporated in the library of DLS. Moreover, the applicable Delaware case law makes clear that "ignorance of facts" will not ordinarily toll the statute of limitations. *Freedman v. Beneficial Corporation,* 406 F.Supp. 917 (D.Del.1975). Avins has made no allegation of fraudulent concealment by defendants.

■ I further find that the sixth cause of action is barred as to Widener because it relates to breaches of the same contract which were alleged or could have been alleged in *Avins v. Widener College, Inc.,* C.A. No. 76–222 (D.Del. filed July 8, 1976). The jury response to special interrogatory one in that case found that Widener did not assume any of DLS' obligations to plaintiff. Furthermore, the jury specifically found, in answer to special interrogatory two, that agents of Widener were not liable on claims of interference with any contractual benefit or advantageous relationship between plaintiff and DLS. This specific issue having been tried and decided, collateral estoppel bars its relitigation against all defendants.

### 5. *Eighth and Ninth Causes of Action*

■ The eighth cause of action alleges that defendants breached a September 8, 1974, contract with plaintiff by refusing to grant him a sabbatical leave in the fall of 1977. The ninth cause of action claims that plaintiff was entitled by contract to the

highest salary paid to any faculty member at DLS, and that he was not paid that amount. The contract to which Avins refers is apparently a September 8, 1974, resolution of the DLS Board of Trustees.

As previously discussed, plaintiff shows no proof that he was entitled to a sabbatical leave. *See supra* at 319. Neither Widener nor DLS have a policy of automatic sabbatical leaves for faculty members. In fact, the September 8, 1974, resolution does not refer, in any way, to sabbatical leave. I also note that the jury verdict in *Avins v. Widener College, Inc.,* No. 76–222 (D.Del. filed July 8, 1976) determined that Widener did not assume any obligations to plaintiff that may have been owed to Avins by DLS. *See supra* at 322.

Moreover, Avins' claims are barred by the applicable statutes of limitations. Avins alleges that he was denied a sabbatical leave for the fall semester, 1977. Once again, whether this claim arises under the one-year Delaware statute, 10 Del.C. § 8111, or the three-year Delaware statute, 10 Del.C. § 8106, it is time-barred. Likewise, the ninth cause of action—the salary claim—is subject to the one-year Delaware statute of limitations for Work, Labor or Personal Services, 10 Del.C. § 8111. As Avins complaint was filed on March 31, 1981, his salary claim is also time-barred. *See Sorensen v. Overland Corporation,* 242 F.2d 70 (3d Cir.1957); *Mitchell v. E.I. duPont deNemours & Co.,* 310 A.2d 641 (Del.1973); *State ex rel. Carpenter v. Boyce,* 46 Del. 169, 81 A.2d 294 (1951); *Department of Labor ex rel. Commons v. Green Giant Co.,* 394 A.2d 753 (Del.Super. Ct.1978).

### 6. *Tenth Cause of Action*

■ The tenth cause of action alleges plaintiff's discharge on April 20, 1978, as a faculty member of DLS, and claims that plaintiff was entitled to a year's salary, as severance pay, for the year following his discharge. The cause of action also makes reference to his dismissal due to a "spuri-

ous academic proceeding." [13] *Complaint,* ¶ 28. The grounds for what Avins apparently believes was his improper dismissal was his alleged lifetime contract with DLS.

I note at first that the jury in *Avins v. Widener College, Inc.,* C.A. No. 76–222 (D.Del. filed July 8, 1976), concluded that Widener had assumed no contractual obligations that DLS may have owed to Avins. Both Widener and the individual defendants may claim the res judicata effect of the verdict in *Avins v. Widener.* Moreover, the claims set forth in the tenth cause of action are employment-related, and are therefore barred by the applicable statute of limitations. 10 Del.C. § 8111.

7. *Eleventh and Twelfth Causes of Action*

These claims allege libel and defamation of plaintiff by Weeks. The first defamatory incident, Avins asserts, was a telephone interview given by Weeks to the ABA Journal in December of 1978. The interview was conducted in response to a letter written by Avins to the ABA Journal, which Avins sent on DLS letterhead. In the course of the interview, Weeks told the Journal that "as far as [Weeks was] concerned, [Avins was] nothing [at DLS]." Avins second defamation claim, the twelfth cause of action, alleges that certain statements made by Weeks in a letter to Dean Gordon Gee, Chairman of the ABA inspection team for DLS on April 6, 1978, were libelous. Because I have determined that Avins has not stated a cause of action for defamation, judgment will be entered in favor of Weeks as to the eleventh and twelfth causes of action.[14]

■ The statements made by Weeks in the telephone interview were clearly his personal opinion. Publication of a personal opinion does not give rise to a defamation claim. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41

L.Ed.2d 789 (1974); *Avins v. White,* 627 F.2d 637, 642 (3d Cir.1980). The use of general criticism and loosely defined terms likewise are insufficient to state a defamation claim. *Buckley v. Littell,* 539 F.2d 882 (2d Cir.1978), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 777 (1977); *Avins v. White,* 627 F.2d at 642.

■ Weeks' remark that Avins was "nothing" at DLS, taken as a rebuttal to Avins' statements regarding DLS, is at most a general statement of criticism. Alternatively, even if taken in another context and viewed as a factual statement, the Weeks comment is not actionable. At the time Weeks made the alleged remarks those statements were in fact true, because Avins had no relationship with DLS. Avins had been dismissed from the DLS faculty in April of 1978. He ceased to be a DLS trustee in August of 1978. Accordingly, at the date of the December 1978 publication he was not connected with DLS in any capacity, nor does he so contend. In fact, at the time the ABA Journal article was published, Avins was operating the District of Columbia Law School in Washington, D.C.

■ As to the twelfth cause of action, I have also concluded that the April 6, 1978, Weeks letter to the ABA Inspection Team did not defame Avins. That letter was written by Weeks in response to the request of the Inspection Team, which request was caused by an earlier letter from Avins to the Team. Weeks letter does not constitute libel because it was not an unauthorized publication. Avins instigated the letter himself when he complained to Gordon Gee that DLS was acting in violation of ABA regulations. Avins knew that Weeks was asked for a response to Avins' charges, and thus, may be deemed to have consented to the publication by Weeks. *Cf. Ginsburg v. Black,* 237 F.2d 790 (7th Cir.

---

13. Despite Avins' characterization, it is undisputed that DLS followed the procedure established by the regulations of the American Association of University Professors for charges against tenured faculty members.

14. Weeks is the only defendant named in the eleventh and twelfth causes of action. Avins has made no allegations that implicate the other defendants in the alleged defamation.

1956), *cert. denied*, 353 U.S. 911, 77 S.Ct. 669, 1 L.Ed.2d 665 (1957).

Moreover, Weeks letter is non-actionable as defamation based upon the common law privilege reflected in the Restatement (Second) of Torts § 596 (1977):

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

Communications between DLS and the ABA Inspection Teams about matters "germane to DLS' accreditation" are entitled to this privilege. *Avins v. White*, 627 F.2d at 645. The privilege is, of course, qualified in that it must be exercised in good faith, without malice, and can be lost by overpublication, *i.e.*, publication to one outside the group entitled to the information. *Id.* Weeks' letter clearly fits within the privilege. Weeks was asked to respond to Avins' accusations and charges, and did so fully and completely. The response was solely sent to Dean Gee, the Inspection Team, and to the two ABA officials to whom Avins sent copies of his letter.[15]

### 8. *Thirteenth Cause of Action*

■ This cause of action is apparently based on the failure of DLS to provide Avins with a "travel allowance." However, Avins points to no documentation which supports his claim for such an allowance. The complaint reads that Avins "was entitled under his contract" to the travel allowance. *Complaint*, ¶ 31. If by this plaintiff is referring to his alleged contract with DLS, his claim is barred by the jury verdict in *Avins v. Widener College, Inc.* There, the jury determined that Widener had assumed no contractual obligations that DLS may have owed to Avins. Finally, the only relevant submission from Avins regarding the travel claim is a request by Avins dated December 8, 1976. Avins' demand for travel allowance is therefore barred by the applicable three-year statute of limitations. 10 Del.C. § 8106.

### 9. *Fourteenth Cause of Action*

The fourteenth cause of action repeats various allegations made by Avins in *Avins v. Widener College, Inc.* These include a claim that a letter written by Avins to a Roger Cramton urging Cramton not to appoint Clinton Bamberger, Jr. to a federal post was stolen and posted on a student bulletin board by Weeks; that a copy of a letter written by Avins on November 13, 1975 to Pasco Bowman describing the situation at DLS as violent and chaotic was similarly posted on a student bulletin board; that plaintiff was denied a $2,000.00 salary increase promised in 1974; that Weeks accused Avins of engaging in a "Ponzi" scheme; that defendants interfered with Avins' right to have the DLS library and building named after him; and that as a result of these acts, Avins suffered physical and emotional injuries. Avins alleges tortious interference with his advantageous relations with DLS, as well as the intentional infliction of mental and physical injury on the plaintiff.

■ The above claims are barred as to Widener by the combined effect of the jury verdict and Judge Latchum's rulings in *Avins v. Widener College, Inc.* As previously discussed, *see supra* at 318–319, a cause of action for interference with contractual rights or expectations does not lie against a party to the contract, or against a party's agent. Insofar as the individual defendants acted as agents of DLS, they are not individually liable for interference with Avins' contractual or advantageous relations with DLS. Alternatively, to the extent the individual defendants acted as agents of Widener, they were exonerated on that basis by the jury verdict in *Avins v. Widener College, Inc.*

■ Avins' claims for alleged physical and mental injury could have been brought

---

15. As a further ground for finding against plaintiff, I note that the eleventh and twelfth causes of action are barred by the applicable Delaware statute of limitations. 10 Del.C. § 8119.

in the *Avins v. Widener College, Inc.* action, and are therefore barred here. Moreover, Avins has not proffered evidence sufficient to establish any causal connection between the alleged acts of defendants and his alleged physical and mental injury, and thus has not stated a claim on this ground. Finally, all of the claims are barred individually and as a whole by the various applicable statutes of limitations: 10 Del.C. § 8119, as to physical and mental injuries; 10 Del.C. § 8106, as to other injuries; and 42 Pa.C.S.A. § 5523 and 10 Del.C. § 8119 as to defamation claims.

10. *Fifteenth Cause of Action*

The fifteenth cause of action alleges that Weeks invaded plaintiff's "property and privacy rights" by giving to faculty members and ABA officials the following: (1) a letter from plaintiff to Roger Cramton on November 5, 1975 (*see* discussion of fourteenth cause of action, *supra* ); (2) a letter from plaintiff to Pasco Bowman on November 13, 1975 (*see* discussion of fourteenth cause of action, *supra* ); (3) a letter from Avins to the Pennsylvania Board of Law Examiners on July 6, 1976, seeking to preclude a former DLS student from admission to the Pennsylvania Bar; and (4) a letter from plaintiff to the University of Bridgeport on October 7, 1977, seeking a list of names of applicants rejected for admission to that law school.

 The critical element for a legally cognizable claim of invasion of privacy is disclosure of *private* facts about the person asserting the claim. *Reardon v. News-Journal Company*, 53 Del. 29, 164 A.2d 263 (1960). In the fifteenth cause of action, Avins apparently bases his claim of invasion of privacy on the dissemination of his letters to the members of the DLS Grievance Committee who were to hear the charges instituted by DLS against plaintiff. This action did not constitute publicity for purposes of invasion of privacy law. *See Wells v. Thomas*, 569 F.Supp. 426, 436–38 (E.D.Pa.1983). Furthermore, an examination of the circumstances and nature of the two other letters demonstrates that the correspondence did not relate to Avins' personal or private life, and therefore Avins had no right of privacy in them.

 I have also concluded that Avins cannot make out a claim for common law copyright against defendants, if that is what is meant by his "property" claim. It is widely accepted that "[t]he recipient of a letter has the absolute right either to destroy it or preserve it and permit its limited inspection by others, or to transfer its possession to others." Nimmer, *The Law Of Copyrights*, § 5.04 at 5–32 (1981 rev.). That is, the author of a letter does not have an absolute property right in that document. Others may make "fair use" of the letter. One such accepted use is "[w]here the occasion requires or justifies the recipient in publishing the letter in order to furnish information vital to the protection of the rights and character of himself or others...." *Id.* at 5–34.1 (footnotes omitted).

 In this case, the four letters at issue involved matters of great significance to DLS. The Bowman letter severely attacked DLS, the Cramton letter posed a potential danger to the ABA accreditation of DLS, and the letter to the Pennsylvania Board of Law Examiners attacked an alumnus of DLS. The dissemination of these letters to persons evaluating Avins' qualifications to continue as a member of the DLS faculty was necessary to protect DLS itself, as well as its students and alumni.

Moreover, these letters were the subject of Avins' claims in *Avins v. Hannum, et al.*, C.A. No. 79–0089 (E.D.Pa. filed January 9, 1979), which were dismissed *with* prejudice and are barred by res judicata. The allegations with respect to the Bowman and Cramton letters were also made in *Avins v. Widener College, Inc.*, and were decided against plaintiff. Those allegations are therefore similarly barred as to Widener and the individuals charged as agents of Widener. Finally, the claims for invasion of privacy are barred by the applicable statute of limitations. 10 Del.C. § 8119.

### 11. *Sixteenth Cause of Action*

■ In the sixteenth cause of action, Avins claims violation of the Privileges and Immunities Clause of the United States Constitution due to defendants' circulation of the November 5, 1978, letter written by Avins to Cramton in connection with dismissal charges against plaintiff. Avins alleges no identifiable state action in this cause of action, and his allegations do not state a claim upon which relief may be granted. The identical claim was dismissed with prejudice on that ground by Judge Brotman in an earlier action brought by Avins. *Avins v. Hannum*, 497 F.Supp. 930, 944 (E.D.Pa.1980). I therefore hold that Avins' sixteenth cause of action does not state a claim upon which relief can be granted.

### 12. *Seventeenth and Eighteenth Causes of Action*

The seventeenth and eighteenth causes of action allege that a contract between Widener and DLS was created when Widener on April 11, 1975, made a letter offer to DLS regarding affiliation, which DLS allegedly accepted on May 24, 1975. Avins claims that this transaction created a contract, of which he is a third-party beneficiary, which is independent of the affiliation agreement between the schools dated June 1, 1975. Under this "earlier" contract, Avins alleges, Widener assumed greater contractual obligations of DLS to Avins than Widener did by way of the affiliation agreement. Plaintiff further alleges that the drafters of the affiliation agreement fraudulently failed to include the assumption of the additional obligations in the affiliation agreement. Finally, he claims that DLS trustees orally promised Avins that certain honors and salary obligations owed by DLS to him would be absorbed by the affiliation agreement with Widener.

■ I first note that plaintiff's offer of proof is not sufficient to show a contract between DLS and Widener before consummation of the affiliation agreement of June 1, 1975. Both the April 11, 1975, letter from Widener to DLS and the May 24, 1975, resolution of the DLS Board contemplate a later agreement, which was in fact subsequently made. This being the case, traditional parol evidence rules bar Avins from offering prior documents, oral representations or negotiations to alter the terms of the affiliation agreement.

I have further concluded that the jury verdict in *Avins v. Widener College, Inc.,* C.A. No. 76–222 (D.Del. filed July 8, 1976), precludes Avins' claims that Widener assumed any contractual obligations of DLS to Avins. The eighteenth cause of action also challenges matters which were raised or could have been raised in *Plechner v. Widener College, Inc.,* C.A. No. 75–2862 (E.D.Pa. filed October 8, 1975), in which Avins advanced multiple theories as to the wrongful conduct of Widener in connection with the acquisition of DLS. Claims of misrepresentation by Widener, its agents, and Dean Weeks are discussed throughout Judge Becker's opinion. *See Plechner v. Widener College, Inc.,* 418 F.Supp. 1282 (E.D.Pa.1976). Particular facts relating to the activities of Widener and DLS during the period of time alleged in the eighteenth cause of action (May 24, 1975 to September 11, 1975) are referred to specifically in the *Plechner* decision. *See id.* at 1292. Avins is also precluded from relitigating these claims due to Judge Brotman's dismissal with prejudice of similar claims. *Avins v. Hannum, et al.,* C.A. No. 79–2089, slip op. at 2 (E.D.Pa. Aug. 5, 1981); *Avins v. Hannum, et al.,* C.A. No. 79–89, slip op. at 11–12 (E.D.Pa. April 23, 1979). Finally, I note that all of the claims in the seventeenth and eighteenth causes of action are barred by the applicable statutes of limitations. 10 Del.C. § 8106; 10 Del.C. § 8111.

### 13. *Nineteenth Cause of Action*

■ In the nineteenth cause of action, Avins complains of the failure to name the DLS library and building in his honor, and the failure to place his portrait or bust in a place of honor "in accordance with academic custom." *See* Complaint at ¶ 37. Avins charges that defendants interfered

with his contractual rights to these honors. This cause of action repeats claims made by Avins in ¶¶ 12(m) and 32(d) of his Complaint. *See* discussion of second cause of action, *supra* at 315–319, and discussion of fourteenth cause of action, *supra* at 324–325. The nineteenth cause of action is therefore barred by the statute of limitations set forth in 10 Del.C. § 8111 and 10 Del.C. § 8106. It is also barred as to Widener by the res judicata effect of the jury verdict in *Avins v. Widener College, Inc.,* C.A. No. 76–222 (D.Del. filed July 8, 1976). The jury verdict in that case bars the nineteenth cause of action as to the individual defendants insofar as they are alleged to have been agents of Widener. No claim can be stated against DLS or the individual defendants for interference with Avins' contractual relations with DLS for the reasons set forth in the discussions of plaintiff's second cause of action, *see supra* at 315–319, and plaintiff's fourteenth cause of action, *see supra* at 324–325.

### 14. *Twentieth Cause of Action*

Avins claims that defendants have interfered with his contractual right to receive a pension from DLS in the amount of one-half his salary for any period he was not employed by DLS. Plaintiff has failed, however, to produce any identifiable document that guarantees such pension benefits to him. Moreover, the claim is barred by the applicable statute of limitations, 10 Del.C. § 8111. It is also barred as to Widener by the res judicata effect of the jury verdict in *Avins v. Widener College, Inc.,* C.A. No. 76–222 (D.Del. filed July 8, 1976). Finally, as previously discussed in this Opinion, Avins does not state a claim against DLS, or against the individual defendants as agents of DLS, for interference with plaintiff's contractual rights or reasonable expectations of advantageous relations with DLS.

### 15. *Twenty-First Cause of Action*

The twenty-first cause of action states that subsequent to April 20, 1979, Avins was deprived of "salary and benefits as a DLS faculty member by [his] wrongful dismissal." *Complaint,* ¶ 39. Once again, I disagree with Avins' claim. As is made clear by the affidavits of Moll and Weeks filed with defendants' motion and brief, Avins was afforded the rights of tenured faculty members under the rules of the American Association of University Professors (AAUP), even though DLS had never formally adopted the AAUP guidelines. The AAUP procedures would actually satisfy the due process requirements imposed on state colleges. *Cf. Chung v. Park,* 377 F.Supp. 524 (M.D.Pa.1974), *aff'd,* 514 F.2d 382 (3d Cir.1975), *cert. denied,* 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975). The report eventually prepared by the DLS Grievance Committee contained findings on every charge made against Avins. It was given to him, and Avins was advised of his right to appeal pursuant to AAUP rules. He did not exercise that right.

Avins is further precluded by collateral estoppel from proving the facts alleged in cause of action two and cause of action fourteen as part of the claim for wrongful dismissal. In both *Plechner v. Widener College, Inc.,* C.A. No. 75–2862 (E.D.Pa. filed October 8, 1975) and *Avins v. Widener College, Inc.,* C.A. No. 76–222 (D.Del. filed July 8, 1976), it was decided that the acts of Weeks and agents of Widener were not improper and did not constitute interference with any of Avins contractual rights, advantageous relations or reasonable expectations from DLS, and to this extent they cannot be used to support the wrongful dismissal claim. Finally, Avins is barred from asserting this claim against Widener because of the jury determination in *Avins v. Widener College, Inc.,* that Widener did not assume any of DLS' alleged obligations toward plaintiff, which obviously would include any alleged rights to continued employment.

### CONCLUSION

For the reasons set forth in this Opinion, defendants' motion for summary judgment will be granted. Judgment will be entered

in favor of defendants and against plaintiff.