## Novello v. Medical Electronics and Research Corporation

*Charles W. Gross*, for plaintiff.

*Burton Spear*, for defendant.

McDEVITT, 3rd, J., September 22, 1971—This case was tried before the Hon. John J. McDevitt, 3rd, without a jury, on December 15, 1970. This action involves compensation to plaintiff who was the principal officer, treasurer and a 10-percent shareholder of defendant corporation from 1961 to 1968 for services performed from 1963 to 1968. Defendant contends these services were minimal and, further, that by agreement of all the shareholders and officers and approval by the board of directors, no compensation would be provided until such time as the corporation was financially able to pay. Plaintiff, on the other hand, contends he has performed substantial services as the only officer and employe to do so on a daily basis, and that the corporation's liability for payment of his salary is absolute.

### FINDINGS OF FACT

1. Defendant, Medical Electronics and Research Corporation, is a New Jersey corporation specifically

formed to hold and exploit the right to an invention called a dental articulator, a device used in the manufacture of dentures, which was its principal asset.

2. All the officers, shareholders and directors, including plaintiff, are domiciliaries of the Commonwealth of Pennsylvania.

3. Plaintiff, Alfred T. Novello, was an officer, treasurer, a director, accountant and a 10-percent shareholder from defendant's formation in 1960 until 1968.

4. Plaintiff was the principal officer of defendant from 1961 to 1968 until his resignation.

5. Plaintiff still is a 10-percent shareholder of defendant corporation.

6. All the assets and business records of defendant, located in Pennsylvania and New Jersey, have been garnished by plaintiff.

7. Plaintiff's compensation was fixed by agreement on August 19, 1961, at $14,000 per year.

8. On December 16, 1961, by agreement, plaintiff's compensation as president and treasurer was fixed at $14,000 per year effective January 1, 1962, subject to the availability of funds for said purpose, otherwise the amounts payable were to be accrued until such time as funds became available. This agreement was continued until December 21, 1963.

9. On December 21, 1963, by agreement, plaintiff's compensation for 1963 was reduced to $7,000 per year subject to the availability of funds. In 1963, plaintiff was paid $1,904 and given a $5,096 non-interest bearing promissory note for the remainder.

10. From 1964 to 1968, plaintiff's salary was neither paid nor accrued on defendant's business records, nor were promissory notes issued.

## DISCUSSION

This case turns on the interpretation to be given the words of the agreement, ". . .compensation payable to officers and others for services rendered to this corporation is to be subject to the availability of funds for said purpose. . ."

There are two views as to the meaning of a promise to pay when able, which is the essential meaning of the words provided in the agreement above. In a majority of jurisdictions in which this question has arisen, it is held this is not an absolute but a conditional promise to pay, and that, therefore, the promisee, in order that he may recover on such a promise, must allege and prove ability of the promisor to pay the debt. The minority view construes the statement to mean a promise to pay in a reasonable time. The cleavage between the two views is caused by conflicting opinions as to the importance to be attached to an agreed due date based on the happening of an uncertain contingency, i.e., one not certain to occur. Those holding the majority view treat it as a valid condition precedent to accrual of the cause of action. The minority view holds that ability to pay or any equivalent provision is too uncertain and indefinite to constitute a condition. Thus, the condition is merely an arrangement that the promisor is not to pay immediately but may delay payment until a reasonable time has elapsed.[1]

This court does not subscribe to either view as necessarily controlling here, but rather looks to the intention of the parties as determined from their entire course of conduct from the formation of

---

[1] 94 A. L. R. 721; 17 Am. Jur. 2d, Contracts §341.

defendant corporation to the time plaintiff resigned.[2]

The formation of a new corporation to engage in the manufacture and sale of a new and untried device is, at best, a very speculative venture. Thus, it is a reasonable assumption that the parties would forego compensation in order to promote a venture promising a large future return. In this instance, the venture proved to be unsuccessful. From the outset, the initial resolution defined the basic relationship of officers and directors to the corporation and established the course for the future. At the first organization meeting on December 17, 1960, there was no discussion about salaries.

At the next meeting, it was established by resolution dated May 18, 1961, that professional services were to be rendered without compensation until the board should direct otherwise. At the directors' meeting of August 19, 1961, a schedule of salaries for officers was set up for the fiscal year, payable only on condition that the corporation's earnings were sufficient for that purpose, and providing further that sums not paid were to be accrued until the occurrence of the aforesaid condition.

Again, at the directors' meeting of December 16, 1961, the board provided substantially the same schedule of salaries for the year 1962 under the identical conditions.

At the meeting of August 18, 1962, the directors reaffirmed the accrual of salaries through the end of 1962, and on January 19, 1963, the board reenacted, in every particular, the 1962 schedule of salaries and the conditions attached thereto.

---

[2] Westinghouse Electric Co. v. Murphy, Inc., 425 Pa. 166 (1967); Ludwig Honold Mfg. Co. v. Fletcher, 405 F. 2d 1123 (1969); Kennedy v. Erkman, 389 Pa. 651 (1957).

By the end of 1963, however, experience had indicated that a reduction in salaries was in order. Therefore, the board, by resolution dated December 21, 1963, substantially reduced all officers' scheduled salaries for that year, and this was confirmed at the next meeting of March 7, 1964. In 1963, only a portion of each individual's salary was actually paid, the corporation acknowledging its obligation to pay the balance through a promissory note.

From March 7, 1964, onward, no schedules of salaries were established, no salaries were accrued, and no promissory notes were issued for any of the succeeding years 1964 through 1968. The payment of the salary schedules for 1961, 1962 and 1963, established by the board, was made subject to the availability of funds for the purpose. Although the minutes of the meetings of December 21, 1963, and March 7, 1964, do not specifically mention this condition, they refer back to the minutes of the meeting of January 19, 1963, as a consequence of which the condition is incorporated by reference.

Raymond J. Porreca, an attorney-at-law, who was secretary of defendant corporation, testified that he was uneasy and in disagreement with Novello when the latter stopped accruing unpaid salaries in 1964. Clearly, Porreca understood the significance thereof, that the corporation intended thereby to disavow any intention to pay salaries for the years 1964 through 1968. He further testified, that it was always his understanding that payment of salaries was subject to availability of funds, that salaries would be paid "when and if" funds were available for the purpose.

There is ample evidence to indicate that the parties had high expectations for defendant corporation's success. These expectations did not materialize. In

fact, from 1963 onward, the gross receipts of defendant decreased markedly. So much so that there were insufficient funds to pay salaries. From the actual arrangement as evidenced by the corporate records and the understanding of the parties, no liability was to attach to the corporation in the event no funds were available for salaries. The corporation not being in a position to pay salaries, a condition precedent to its liability, plaintiff cannot recover.

## CONCLUSIONS OF LAW

1. This contract action is governed by the laws of the Commonwealth of Pennsylvania, the place with the most significant relationship to the parties and transactions.[3]

2. It was the intention and understanding of the parties that defendant corporation would not pay salaries until such time as it became a profitable concern and financially able to pay.

3. Defendant corporation's liability for payment of salaries does not arise until such time as it is financially able to pay.

4. Defendant corporation was not in 1963, nor is it now, a profitable concern. Therefore, it is not financially able to pay salaries.

## ORDER

And now, September 22, 1971, pursuant to Pennsylvania Rule of Civil Procedure 1038, the court finds in favor of defendant, Medical Electronics and Research Corporation.

---

[3] Neville Chemical Co. v. Union Carbide Corp., 422 F. 2d 1205 (1970).

If no exceptions are filed to this decision within 20 days this decision shall become the final judgment of this court.