NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3918
_____

MUKESHKUMAR B. PATEL

v.

VITHALBHAI D. DHADUK, a/k/a Vithal D. Dhaduk,
                                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-17-cv-02243)
District Judge: Honorable A. Richard Caputo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on November 10, 2020

Before: HARDIMAN, GREENBERG, and SCIRICA, *Circuit Judges*

(Filed: December 22, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, Circuit Judge

Mukeshkumar Patel brought suit against his former business partner Vithalbhai Dhaduk for breach of contract related to a Memorandum of Understanding they signed at the conclusion of their business relationship. Dhaduk filed a counterclaim for tortious interference related to a personal loan provided through one of Patel's affiliated companies. For the reasons discussed below, we will affirm the orders of the court granting summary judgment in favor of Patel's breach of contract claim and dismissing Dhaduk's counterclaim.

I

Patel and Dhaduk were friends and business partners for several years. On July 16, 2015, however, the two parties signed a Memorandum of Understanding ("MOU") in order to "conclude [their] business relationship" and "conclude the entire business venture." They decided to separate their joint ventures, including the companies Somahlution ("Soma") and GPA. The MOU had two provisions related to Soma and GPA:

> 2). Dr. Dhaduk keeps Soma/GPA/Nuron (loss or profit).
>
> 3). Dr. Dhaduk will pay Mukesh bhai[1] USD 9.45 Million as soon as he can for exiting Soma/GPA.

Although the MOU does not state the source of the funds for the $9.45 million payment, Dhaduk maintains the parties agreed the payout will only come from the profits of Soma

---

[1]    Mukesh bhai refers to Patel.

and GPA.  Since signing the MOU, Dhaduk has invested an additional $30 million into Soma but has not paid Patel.

Prior to the dissolution of their business relationship, Dhaduk gave Patel "a personal loan of $1.1 million dollars to come through" a corporation named NKD, and "NKD executed a promissory note in that regard."  Dhaduk alleges NKD is "one of Mr. Patel's affiliated companies."  Patel allegedly directed NKD to not repay the loan on the grounds that it was covered by the MOU.  NKD has not paid Dhaduk.

Patel filed a complaint on December 6, 2017 alleging Dhaduk breached the MOU by not paying him the $9.45 million.  After filing an answer and affirmative defenses in response to an amended complaint, Dhaduk filed an amended answer with counterclaims. After the court dismissed his counterclaims, Dhaduk filed an amended tortious interference counterclaim tied to the NKD loan.  The court dismissed that claim on November 6, 2019. Meanwhile, Patel moved for summary judgment on the contract claim.  On December 2, 2019, the court granted summary judgment in favor of Patel after finding that the contract was unambiguous.  This appeal followed.

II[2]

Dhaduk contends summary judgment on the breach of contract claim was improper because the MOU term "as soon as he can" is ambiguous and he should be allowed to

---

[2]    The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.  Our review of a district court's order granting summary judgment is plenary.  Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party

3

introduce parol evidence to allow a jury to interpret the term. Under Pennsylvania contract law, if a term is ambiguous then parol evidence is permitted. If the parol evidence demonstrates there is a genuine dispute of material fact regarding the interpretation of the term, then summary judgment is improper.

Whether a term in an agreement is ambiguous is a question of law that courts can determine. In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 845 (3d Cir. 2020). A contract term "is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Id. This ambiguity can be patent or latent. A patent ambiguity is one that is apparent on the face of the document, and a latent ambiguity is "created by extrinsic or collateral circumstances." Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004).

As this is a diversity case governed by Pennsylvania law, we look to the Pennsylvania Supreme Court for guidance in determining whether the term is ambiguous. When there is no state supreme court precedent, "we must predict how that court would resolve the issue." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220 (3d Cir. 2006). In our analysis, "an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Comm'r v. Bosch's Estate, 387 U.S. 456, 465 (1967) (alteration in original).

---

fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

4

With no Pennsylvania Supreme Court precedent on point,[3] we turn to intermediate appellate state courts for guidance. In <u>Wilker v. Jenkins</u>, the Pennsylvania Superior Court reviewed a contract in which the debtor was "Due to pay as fast as I can." 88 Pa. Super. 177, 178 (Pa. Super. Ct. 1926). The court reflected favorably on a U.S. Supreme Court decision upholding a contract to "pay as soon as the crop can be sold or the money raised from any other source" because "it could not have been the intention of the parties that if the crop was destroyed . . . and the defendants could not procure the money from any other source, the debt should never be paid." <u>Id.</u> at 179 (quoting <u>Nunez v. Dautel</u>, 86 U.S. 560 (1873)). The Superior Court concluded that the term "allow[ed] the payor a reasonable time within which to make payment or acquire the means so to do, but that this time shall not be so extended as to defeat the purpose of the contract and enable the debtor to wholly avoid his obligation." <u>Id.</u> at 181. The Superior Court further held that when parties agree that the time for repayment is conditioned on "the happening of a future event"—including the future event of a party becoming able to pay a sum of money—and that "event does not occur, the law will imply that the undertaking was to pay the debt and to do that within a reasonable time." <u>Id.</u> at 181–82.

---

[3]   Cases featuring similar "pay when able" terms have reached the Pennsylvania Supreme Court, but the opinions focus on whether this language can toll a statute of limitations, e.g., <u>In re Maniatakis' Estate</u>, 101 A. 920 (Pa. 1917), and in what circumstances similar language can become so abstract that there is no contract, <u>e.g.</u>, <u>Nelson v. Von Bonnhorst</u>, 29 Pa. 352, 355 (1857) (holding an agreement to pay "whenever, in my opinion, my circumstances will enable me to do so" was not enforceable). Neither of these circumstances are present here.

Despite that general rule, there are circumstances under Pennsylvania law where courts should not require payment if the triggering condition has not been met. In a decision later affirmed by the Superior Court, the Court of Common Pleas noted the different interpretations of a "pay when able" clause,[4] then concluded it did "not subscribe to either view as necessarily controlling here, but rather look[ed] to the intention of the parties as determined from their entire course of conduct." Novello v. Med. Elecs. & Research Corp., 60 Pa. D. & C. 2d 355, 357 (C.P. 1971), *aff'd per curiam*, 223 Pa. Super. 736 (1972). In Novello, an individual who was an "officer, treasurer, a director, accountant and a 10-percent shareholder" brought suit for unpaid salary where the corporation agreed compensation would be "subject to the availability of funds." Id. at 356. The court noted plaintiff was involved in a "speculative venture" where it was reasonable to put off compensation to seek a "large future return" and the board of directors repeatedly put off the payment of salaries. Id. at 358. This, along with testimony from another employee, demonstrated the intention of the parties that no salaries would be paid until the company became profitable. Id. at 360.

Wilker, the Pennsylvania Superior Court case, provides the better framework for this case. The parties manifested an intent for Dhaduk to pay Patel in exchange for Patel exiting Soma and GPA. While repayment is tied to Dhaduk's future ability to pay, "time shall not be so extended as to defeat the purpose of the contract and enable the debtor to

---

[4] The majority view interprets "pay when able" to mean payment depends on whether the debtor actually has the ability to pay, while the minority view interprets "pay when able" to mean within a reasonable amount of time. 14 Williston on Contracts § 42:9 (4th ed. 2020).

6

wholly avoid his obligation." Wilker, 88 Pa. Super. at 181. Unlike Novello, exiting a company in exchange for a payout is not a "speculative venture" and the agreement was not part of a series of agreements setting forth conditions on payment. As a result, we believe Pennsylvania courts would find this language to unambiguously mean that Dhaduk has a "reasonable time within which to make payment or acquire the means so to do." Id. Here, five and a half years have passed since the MOU was signed. While this is not as long as the six years in Wilker, we conclude five and a half years has been a reasonable amount of time for the payment of this debt—especially since Dhaduk has given no indication that he has any plan to acquire the funds within any discernable timeframe.

Dhaduk contends "as soon as he can" is patently ambiguous because it is not clear the steps a debtor must take to pay the debt—must the debtor take money out of his retirement account, empty his bank account, or take out a payday loan? Dhaduk seeks to bolster this argument by noting there is a majority and minority rule for interpreting "pay when able" provisions in contracts.[5] Given the Pennsylvania Superior Court ruling in Wilker, however, we reject Dhaduk's patent ambiguity argument and conclude the Pennsylvania Supreme Court is likely to conclude "pay when able" is unambiguous and requires payment within a reasonable amount of time.

In the alternative, Dhaduk contends "as soon as he can" is latently ambiguous because Patel testified that he believed Dhaduk had "sufficient resources" to make the $9.45 million payment and Dhaduk's obligation to make the payment would take at least a

---

[5] See supra, note 4.

7

year to ripen. This allegedly demonstrates Patel believed the obligation would be triggered by something other than Dhaduk being able to pay. But Dhaduk being able to pay but having at least a year before the obligation ripens would be consistent with a requirement that the $9.45 million be paid within a reasonable amount of time. Accordingly, Patel's testimony does not create a latent ambiguity.

Dhaduk also contends he should be able to introduce parol evidence that he and Patel agreed payment would only be made if Soma and GPA became profitable. Dhaduk's proposed interpretation would rewrite the contract, not merely interpret a term. By hinging Dhaduk's obligation to pay Patel on Soma and GPA's success, Dhaduk would have us add a term to the contract. Parol evidence, however, cannot be used to add or subtract terms from a contract. Mellon Bank Corp. v. First Union Real Est. Equity & Mortg. Invs., 951 F.2d 1399, 1405 (3d Cir. 1991) ("[T]he writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence." (quoting Gianni v. R. Russel & Co., 126 A. 791, 792 (Pa. 1924)). Moreover, Dhaduk's suggested term would burden Patel with the risks associated with Soma and GPA experiencing profit or loss. This would stand in direct contravention of MOU Paragraph 2, which states "Dr. Dhaduk keeps Soma/GPA/Nuron (loss or profit)."

Additionally, to the extent Dhaduk asks us to enforce an alleged oral agreement he and Patel made before entering into the MOU, we decline to do so. Dhaduk alleges that prior to executing the MOU he and Patel had an oral understanding that Dhaduk would make the payment when Soma and GPA started generating profits. However, "[i]n cases of this kind, where the cause of action rests entirely on an alleged oral understanding

8

concerning a subject which is dealt with in a written contract it is presumed that the writing was intended to set forth the entire agreement as to that particular subject." Mellon Bank Corp., 951 F.2d at 1407 (quoting Gianni, 126 A. at 792). In the present case, Dhaduk and Patel created a fully integrated agreement, which specifically states, "We will have no other financial or managerial liability except the commitments made in this agreement." Dhaduk may not introduce evidence of a prior oral agreement that would modify the terms of Patel's buyout. See id. at 1407–08.

III[6]

We now consider the court's dismissal of Dhaduk's tortious interference claim. As a preliminary matter, Patel contends we lack jurisdiction because Dhaduk did not specify the court's Fed. R. Civ. P. 12(b)(6) order in his notice of appeal. This argument is unavailing. "[D]ecisions on the merits are not to be avoided on grounds of technical violations of procedural rules, and we have read notices of appeal liberally." Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998). We "exercise appellate jurisdiction over orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the

---

[6] In analyzing a 12(b)(6) motion to dismiss, we accept as true the well-pleaded facts of the counterclaim and disregard legal conclusions. Davis v. Wells Fargo, 824 F.3d 333, 341, 351 (3d Cir. 2016). Additionally, we "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 192 (3d Cir. 2009) (internal quotation marks omitted).

9

unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." Id.

First the two orders are related—the 12(b)(6) order was interlocutory and merged with the final judgment order that settled all outstanding claims in the case. See In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996) ("[I]nterlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order."). Second, the intent to appeal the 12(b)(6) order is apparent from Dhaduk's opening brief. See Weimer v. Cty. of Fayette, 972 F.3d 177, 186 (3d Cir. 2020) ("[I]ntent to appeal . . . is clear from her opening brief."). Third, there was no prejudice as both parties fully briefed the issue. See Polonski, 137 F.3d at 144 ("[T]here is no prejudice since both parties have fully briefed the issues."). Accordingly, we have appellate jurisdiction under 28 U.S.C. § 1291 and will address the merits of this issue.

Dhaduk alleges that Patel is liable for tortious interference of contract because he directed NKD to breach its obligation to repay a $1.1 million loan Dhaduk made to Patel through NKD. Under Pennsylvania law, a claim for tortious interference of contract requires plaintiff to establish the following elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

10

CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004) (quoting Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000). We need only address the first element, because although Dhaduk's description of Patel's relationship with NKD is unclear, by any reasonable reading of the counterclaim, Patel was not acting as a third party. See Rutherfoord v. Presbyterian-Univ. Hosp., 612 A.2d 500, 507–08 (Pa. Super. Ct. 1992) ("By definition, this cause of action requires three separate parties; parties to a contract . . . cannot assert this cause of action against each other.").

## A.

If Patel was the owner of NKD, then he was not a third party. It appears that by describing NKD as one of Patel's "affiliated" companies, Dhaduk is alleging Patel is the owner of NKD. While corporate parents not protecting a "legitimate concern" can interfere with their subsidiaries' contracts, Shared Commc'ns Servs. of 1800-80 JFK Blvd. Inc. v. Bell Atl. Properties Inc., 692 A.2d 570, 575 (Pa. Super. Ct. 1997), at least one Pennsylvania court has held an owner of a corporation cannot interfere with that corporation's contracts, Levin v. Shiffman, 54 Pa. D. & C. 4th 152, 2001 WL 1807922, at *9 (C.P. 2001) ("[T]he tortious interference claim in Count II cannot be maintained . . . because [Defendant] is a 50% shareholder of [the corporation] and would thus be a party to the contract with the District."). Accordingly, as the owner of NKD, Patel was a party to the $1.1 million loan and not a third person as required for a tortious interference claim.

## B.

Alternatively, if Patel was a corporate officer or employee of NKD, he was still not a third party. Because corporations can only act through individuals, "[w]here employees

11

or agents for the corporation act within the scope of their employment or agency, the employees, the agents and the corporation are one and the same; there is no third party." Rutherfoord, 612 A.2d at 508. A corporate officer or employee is within the scope of their employment "unless the individual's *sole* motive in causing the corporation to breach a contract is actual malice directed toward the plaintiff, or the individual's conduct is against the interest of the corporation." Avins v. Moll, 610 F. Supp. 308, 318 (E.D. Pa. 1984) (citing Geary v. U.S. Steel Corp., 319 A.2d 174 (Pa. 1974)).[7] While we do not look for "magic words" like "sole" and "malice," the counterclaimant must plead facts that would allow us to conclude that the counterclaim can survive a motion to dismiss.

Dhaduk's counterclaim fails to demonstrate either that Patel's sole motive was malice or that the direction not to repay the loan was against NKD's interest. Dhaduk contends Patel acted "in retaliation for Dr. Dhaduk informing Mr. Patel that . . . he could not be paid." Even reading this in the light most favorable to Dhaduk, there is no indication that this was done solely to harm Dhaduk and not to recover some of the $9.45 million Dhaduk owes Patel.

Alternatively, Dhaduk contends the action "was against NKD's interest, as NKD is now subject to legal action on the loan." However, we know of no legal proceeding against NKD even though three years have passed since Patel directed NKD not to repay the loan. Furthermore, as the court noted, "the possibility of litigation does not rise to the level of

---

[7] Despite Dhaduk's attempts to characterize the rule regarding employees and officers as an exception to an exception that he need not plead, this is a vital requirement to show that a third party is the one who interfered with the contract.

12

acting against NKD's corporate interest, as the prospect of legal action does not necessarily translate to liability" and "Dhaduk has not alleged that the loan was subject to interest, penalties, or fees." These latter omissions are particularly noteworthy because, as a party to the loan agreement, Dhaduk is privy to whether or not these terms were part of the loan.[8]

IV

For the foregoing reasons, we will affirm the court's orders granting summary judgment on the breach of contract claim and dismissing the tortious interference counterclaim.

---

[8] Dhaduk also seems to suggest Patel may be neither the owner nor an officer or employee of NKD. Instead, "he may simply be good at manipulating others through misrepresentations." However, we do not believe it would be reasonable to read the phrase "Patel's affiliated companies" to mean Patel is a complete outsider to NKD.